ORAL ARGUMENT NOT YET SCHEDULED

## BRIEF FOR APPELLEES

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————

**NO'S. 22-3038, 22-3039 & 22-3041**

———————

UNITED STATES OF AMERICA,
*Appellant*
v.
JOSEPH W. FISCHER, EDWARD LANG, and GARRET MILLER,
*Appellees,*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
D. CT. NO'S. 1:21-CR-234, 1:21-CR-119, 1:21-CR-53 (NICHOLS, J.)

———————

HEIDI R. FREESE, ESQ.
Federal Public Defender
Middle District of Pennsylvania

FREDERICK W. ULRICH, ESQ.
Asst. Federal Public Defender

AMANDA R. GAYNOR, ESQ.
Staff Attorney

100 Chestnut Street, Suite 306
Harrisburg, PA 17101
717-782-2237

F. CLINTON BRODEN, ESQ.
Broden & Mickelsen
2600 State Street
Dallas, TX 75204
214-720-9552

NICHOLAS D. SMITH, ESQ.
David B. Smith, PLLC
1123 Broadway, Ste. 909
New York, NY 10010

STEVEN A. METCALF, II, ESQ.
Metcalf & Metcalf, P.C.
99 Park Avenue
New York, NY 10016

*Attorneys for Appellees*

### CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

Based on D.C. Circuit Rule 28(a)(1), the Appellees state as follows:

## A.   Parties and Amici

The parties appearing before this Court are the United States as appellant, and Joseph Fischer, Edward Lang, and Garret Miller as appellees.  There are no amici.

## B.   Rulings Under Review

The district court dismissed count three of the indictment, which charged Mr. Fischer with obstructing an official proceeding under 18 U.S.C. § 1512(c)(2).  App. 508-09.  The government sought reconsideration of this ruling, and the district court denied that motion.  App. 421.

## C.   Related Cases

The district court dismissed the same charge in *United States v. Fischer*, No. 1:21-CR-00234, Doc. 64, *United States v. Miller*, No. 1:21-CR-00119, Doc's. 72 & 86, and in *United States v. Lang*, No. 1:21-CR-00053, Minute Order June 7, 2022, App. 12.  And more recently, the district court dismissed the same charge in *United States v. Haya*, No.

1:21-CR-00565, Doc. 28.  Counsel anticipate a government appeal in

*Haya.*

# TABLE OF CONTENTS

Certificate of Parties, Rulings, and Related Cases .......................................i

    A.    Parties and Amici .........................................................i

    B.    Rulings Under Review ...............................................i

    C.    Related Cases .............................................................i

Table of Authorities ....................................................................vi

Glossary of Abbreviations ..........................................................xi

Introduction .................................................................................1

Statutes and Regulations .............................................................4

Counterstatement of the Case ....................................................5

    A.    Factual Background ...................................................5

        1.    Fischer .............................................................5

        2.    Miller ...............................................................7

        3.    Lang .................................................................7

    B.    Procedural History .....................................................8

        1.    The district court carefully construed Section 1512(c) consistent with its language, structure, history, and the relevant interpretive cannons. .................................9

        2.    The government moved for reconsideration, and the district court further explained its reasoning supporting the dismissal of the obstruction count. ......12

Summary of the Argument .........................................................15

Argument ....................................................................................16

A.   The district court's holding corresponds with the text, statutory structure, statutory history, and legislative history of Section 1512(c). ................................................. 18

1.   The district court correctly construed the text of Section 1512(c). ........................................... 18

a.   The government's contrary construction diverges from the statutory text and would create other interpretive problems over the scope of Section 1512(c)(2). ......................................... 23

b.   The district court appropriately applied the rule of lenity and exercised restraint in evaluating the reach of Section 1512(c)(2). ............................... 27

2.   The statutory context and structure of Section 1512 .. 30

3.   The "corruptly" and "nexus" elements cannot salvage the government's interpretation ................................. 32

4.   The statutory and legislative history of Section 1512(c) bolster the district court's interpretation and reflect a focus on investigations and evidence. ......................... 36

a.   The statutory predecessors to Section 1512 confirm its narrow scope. ................................... 37

b.   The Sarbanes-Oxley amendment did not alter Section 1512's focus on inquiries or investigations. ................................................... 40

5.   The decisional authority of this Court and others support a narrow focus of Section 1512(c) relating to investigations and evidence. ....................................... 43

6.   The government's interpretation of Section 1512(c)(2) would lead to absurd results. ...................................... 47

     B.     The district court properly dismissed the obstruction counts
under Section 1512(c) consistent with Criminal Procedural
Rule 12(b)(3)(v) when the alleged conduct, participating in
the Capitol riot, fell outside the purview of the Witness,
Victim, or Informant Tampering statute in Section
1512(c) ...................................................................................49

CONCLUSION ...............................................................................52

Certificate of Service

Certificate of Compliance

Statutory Addendum

# TABLE OF AUTHORITIES

## Cases

*Abramski v. United States,*
  573 U.S. 169 (2014) ...................................................28

*Ali v. Fed. Bureau of Prisons,*
  552 U.S. 214 (2008) ...................................................24

*Begay v. United States,*
  553 U.S. 137 (2008) ..................................9, 10, 20, 21, 22, 23, 24, 25, 26

*Clark v. Suarez Martinez,*
  543 U.S. 371 (2005) ...................................................49

*Donnelly v. Fed. Aviation Admin.,*
  411 F.3d 267 (D.C. Cir. 2005)....................................19

*Gundy v. United States,*
  139 S. Ct. 2116 (2019) ..............................................30

*Jeannette Rankin Brigade v. Chief of Capitol Police,*
  342 F. Supp. 575 (D.D.C. 1972)................................49

*Johnson v. United States,*
  576 U.S. 591 (2015) ..............................................9, 17

*Lederman v. United States,*
  291 F.3d 36 (D.C. Cir. 2002)......................................49

*Liparota v. United States,*
  471 U.S. 419 (1985) ...................................................28

*Marinello v. United States,*
  138 S. Ct. 1101 (2018) ..............................................35

*Marx v. General Rev. Corp.,*
  568 U.S. 371 (2013) ...................................................30

*Setser v. United States,*
  566 U.S. 231 (2012) ...................................................19

*United States v. Aguilar,*
  515 U.S. 593 (1995) ...................................................33

*United States v. Burge,*
  711 F.3d 803 (7th Cir. 2013) .....................................26

*United States v. Carson,*
    560 F.3d 566 (6th Cir. 2009) ............................................................ 26

*United States v. Crews,*
    612 F.3d 1131 (9th Cir. 2010) .......................................................... 23

*United States v. Ermoian,*
    752 F.3d 1165 (9th Cir. 2013) ............................................... 44, 45, 46

*United States v. Hillie,*
    227 F. Supp. 3d 57 (D.D.C. 2017) ............................................... 50, 51

*United States v. Kanchanalak,*
    37 F. Supp. 2d 1 (D.D.C. 1999) ...................................................... 40

*United States v. Kelley,*
    36 F.3d 1118 (D.C. Cir. 1994) ............................................... 43, 44, 49

*United States v. Lanier,*
    520 U.S. 259 (1997) ........................................................... 29, 30, 48

*United States v. McHugh,*
    No. 21-453, 2022 WL 1302880 (D.D.C. May 2, 2022) ................... 31, 44

*United States v. Montgomery,*
    578 F. Supp. 3d 54 (D.D.C. 2021) ...................................... 35, 36, 43, 44

*United States v. Nasir,*
    17 F.4th 459 (3d Cir. 2021) ............................................................ 29

*United States v. North,*
    910 F.2d 843 (D.C. Cir. 1990) .................................................... 33, 34

*United States v. Pasha,*
    797 F.3d 1122 (D.C. Cir. 2015) ....................................................... 35

*United States v. Petruk,*
    781 F.3d 438 (8th Cir. 2015) .......................................................... 26

*United States v. Phillips,*
    583 F.3d 1261 (10th Cir. 2009) ...................................................... 26

*United States v. Poindexter,*
    951 F.2d 369 (D.C. Cir. 1991) ..................... 34, 36, 37, 38, 39, 40, 44, 46

*United States v. Reeves,*
    752 F.2d 995 (5th Cir. 1985) ................................................ 33, 35, 36

*United States v. Ring*,
  628 F. Supp. 2d 195 (D.D.C. 2009).......................................................26

*United States v. Stefanie Hazelton*,
  21-CR-30 (D. D.C. 2021)........................................................................48

*United States v. Stinson,*
  592 F.3d 460 (3d Cir. 2010)...................................................................23

*United States v. Volpendesto*,
  746 F.3d 273 (7th Cir. 2014)..................................................................26

*United States v. Wiltberger*,
  18 U.S. (5 Wheat) 76 (1820)..................................................................28

*United States v. Young*,
  916 F.3d 368 (4th Cir. 2019)..................................................................36

*Whitman v. American Trucking Assns., Inc.*,
  531 U.S. 457 (2001).................................................................................30

*Wooden v. United States*,
  142 S. Ct. 1063 (2022)............................................................................27

*Yates v. United States*,
  574 U.S. 528 (2015)...........................................................19, 29, 40, 41

**Statutes**

18 U.S.C. § 1503 ..............................................................30, 32, 37, 38

18 U.S.C. § 1505 ...................................3, 30, 32, 37, 38, 39, 40, 43, 44, 46

18 U.S.C. § 1507 ...........................................................................................43

18 U.S.C. § 1512 .. 2, 3, 4, 11, 22, 30, 31, 32, 37, 38, 39, 40, 41, 44, 45, 46, 48

18 U.S.C. § 1512(a) ........................................................................40, 45

18 U.S.C. § 1512(a)(1)(A).............................................................11, 45

18 U.S.C. § 1512(b) ........................................................................40, 41

18 U.S.C. § 1512(b)(2)(A)............................................................................32

18 U.S.C. § 1512(c)  2, 3, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 22, 24, 28, 30, 36, 41, 42, 43, 48, 49, 52

18 U.S.C. § 1512(c)(1) ..........................9, 10, 11, 18, 19, 20, 22, 23, 24, 27

18 U.S.C. § 1512(c)(2) ... i, 2, 3, 9, 10, 11, 13, 15, 16, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 34, 35, 36, 42, 44, 47, 48, 50

18 U.S.C. § 1512(d)(1)...............................................................27, 30

18 U.S.C. § 1515 .................................................................................4

18 U.S.C. § 1515(a) ..........................................................................44

18 U.S.C. § 1515(a)(1)(B) ...............................................................43

18 U.S.C. § 3731 ...............................................................................51

18 U.S.C. § 924(e)(2)(B) ..................................................................20

18 U.S.C. § 924(e)(2)(B)(i) .......................................................21, 25

18 U.S.C. § 924(e)(2)(B)(ii) ............................................. 17, 20, 21, 22, 24

18 U.S.C. §1519 ................................................................................29

40 U.S.C. § 5104(e)(2)(G) ...........................................................34, 48

## Other Authorities

128 CONG. REC. 26,350 (1982) ...................................................39

128 CONG. REC. 26,810 (1982) ...................................................39

148 CONG. REC. at S6550..............................................................41

148 CONG. REC. S6545 (daily ed. July 10, 2002) ....................42

21 AM. JUR. 2D, *Criminal Law* § 114 (2016) ...........................36

Act of January 13, 1940, ch. 1, § 135(a), 54 Stat. 13 (1940) ...................37

Act of March 4, 1909, ch. 321, § 135, 35 Stat. 1113 (1909)....................37

Antitrust Civil Process Act, 76 Stat. 551 (1962)....................................38

*Evidence & Ballot*, BLACK'S LAW DICTIONARY (11th ed. 2019) ..............51

BLACK'S LAW DICTIONARY 414 (rev. 4th ed. 1951)...............................36

Memorandum from Ass't Att'y Gen. Office of Legal Counsel, Steven Engle & Principal Assoc. Deputy Att'y Gen., Edward C. O'Callaghan to Att'y Gen. William P. Barr (March 24, 2019) ..................................16

Memorandum from Deputy Att'y Gen. Rod Rosenstein & Ass't Att'y Gen. Steven Engle to Att'y Gen. William P. Barr (June 8, 2018) .......16

*Official Proceeding*, U.S. Dep't of Just., Just. Manual, § 1730 (2018) ...44

*Proceeding*, BLACK'S LAW DICTIONARY 1241 (8th ed. 2004) ................... 45

*Proceeding*, OXFORD ENGLISH DICTIONARY ............................................. 45

Pub. L. No. 97-291, sec. 4, 96 Stat. 1252 ........................................... 39

S. REP. No. 107-146, p. 7 (2002) ....................................................... 41

S. REP. No. 532, 97th Cong., 2d Sess. 18 (1982) .................................... 39

WEBSTER'S THIRD NEW INT'L DICTIONARY OF THE ENGLISH LANGUAGE
    UNABRIDGED (3d ed. 2002) .......................................................... 19, 32

## Rules

D.C. Circuit Rule 28(a)(1) ...................................................................... i

FED. R. CRIM. P. 12(b)(3)(v) .......................................................... 3, 49

FED. R. CRIM. P. 7(c) ................................................................... 3, 50

## Guideline Provisions

U.S. SENT'G GUIDELINES MANUAL § 4B1.2(a)
    (U.S. SENT'G COMM'N 2016) ...................................................... 23

## GLOSSARY OF ABBREVIATIONS

App.          Appendix

SApp.         Supplemental Appendix

## INTRODUCTION

Appellees arrived in Washington, D.C., on January 6 to attend the former President's "Stop the Steal" rally. Along with thousands of protesters, they later gathered at the Capitol to demonstrate against a presidential election that they believed was stolen. By the time Appellee Fischer belatedly joined them, for instance, Congress had been in recess for over an hour. No barricades, fences, signs, or police hindered his progress towards the Capitol Building. He entered the building and exited four minutes later. Fischer broke nothing, assaulted no one, and encountered neither legislators nor congressional staff.

For their role in the demonstration and its aftermath, the government charged Appellees with several offenses typically brought after a riot. Their indictments include, for example, civil disorder, disorderly conduct in a restricted building, entering a restricted building, parading or demonstrating in a Capitol building, and assaulting, resisting, or impeding certain officers. *See, e.g.*, App. 52-57, 85-89, 443-46.

But the government also alleged an offense under Section 1512(c) of the Victim, Witness, or Informant Tampering statute, 18 U.S.C.

§ 1512, which Congress enacted to criminalize the obstruction of its legislative inquiries and investigations.  Section 1512(c) criminalizes evidence-impairment crimes in connection with, among other things, "a proceeding before the Congress."  And its elements focus on conduct intended to impair evidence used in those proceedings.

Because Congress's joint session on January 6 did not involve its power of inquiry, the government advances an unprecedented application of Section 1512(c)(2), decoupled from investigations and evidence.  Yet standing in the way are the statutory text (as the district court found), interpretive canons, Supreme Court and Circuit precedent, statutory history, ex post facto principles, and common sense.  Moreover, the government's novel decoupling of the obstruction-of-Congress offense from investigations and evidence extends criminality to political protest at the seat of government and potentially to ordinary legislative business.  It also collapses any conceptual distinction between a Class B parading misdemeanor and a 20-year felony.

Here, it is inappropriate to address Appellees' alleged offense conduct by distorting the Victim, Witness, or Informant Tampering statute with a novel interpretation.

## STATEMENT OF THE ISSUES

1.  In Section 1505, and in Section 1512 of the Witness, Victim, or
    Informant Tampering statute, Congress criminalized the
    obstruction of its inquiries and investigations.  It later added
    Section 1512(c) in the Sarbanes-Oxley Act of 2002 to address fraud
    and abuse by corporate executives involving, for instance,
    document shredding.  The government, construing Section
    1512(c)(2)'s residual clause to disassociate it from investigations
    and evidence, fashioned a novel obstruction offense to charge that
    Appellees interfered with the joint session on January 6, a
    function not involving Congress's power of inquiry.  Did the
    district court err in dismissing this charge given the text,
    statutory history, legislative purpose, and a common-sense
    construction of subsection (c)(2)?

2.  Criminal Procedural Rule 7(c) requires that an indictment include
    the essential facts of the offense charged.  Here, the indictment
    alleged, among other things, that Appellees "obstruct[ed],
    influence[d], and impede[d] an official proceeding, that is, a
    proceeding before Congress, specifically, Congress's certification of
    the Electoral College vote[.]"  Did the district court err in
    dismissing this particular count consistent with Rule 12(b)(3)(v)
    when the alleged conduct, participating in the Capitol riot, fell
    outside the purview of the Witness, Victim, or Informant
    Tampering statute in Section 1512(c)?

### STATUTES AND REGULATIONS

The relevant statutes, 18 U.S.C. §§ 1512 & 1515, are produced in a statutory addendum to Appellant's brief.  Appellees have, however, included the statutory predecessors to Section 1512 in an addendum to this brief.

COUNTERSTATEMENT OF THE CASE

## A.  Factual Background

### 1.  Fischer

The government borrows its factual recitation from the criminal complaint, its filings, and Mr. Fischer's Facebook postings.  *Compare* App. 428-29, 434, 458-59 *with* Appellant's Br. at 9-10.  These factual assertions are not included in the indictment and, in significant respects, stray from the video evidence.[1]

At the invitation of the former President, Mr. Fischer and a companion attended the Stop the Steal rally on January 6 at the Ellipse.  Unlike many of the other attendees, Mr. Fischer declined the President's request to march with the crowd to the Capitol.  Instead, he and his companion headed home.  *See United States v. Fischer*, No. 1:21-CR-00234, Doc. 51 at 4.  But after learning of the swelling demonstration, Mr. Fischer made the regretful decision to drive back to Washington, D.C.  *See id.*

Contrary to the government's narrative, Mr. Fischer was thus not part of the mob that forced the electoral certification to stop.  *See* Appellant's Br. at 8-9.  He arrived at the Capitol grounds well after

---

[1] Mr. Fischer's Facebook posts also differ from the video evidence.

Congress recessed.  *See Fischer*, No. 1:21-CR-00234, Doc. 51 at 4.[2]  And as Mr. Fischer walked toward the East side of the building, no barricades, fences, or signs impeded him.[3]  *See id*.  He ultimately entered the Capitol around 3:25 p.m.  But the crowd knocked Mr. Fischer to the ground as he neared the police line.  Returning to his feet, Mr. Fischer handed a pair of handcuffs to a Capitol police officer.  Just after, the weight of the crowd pushed Mr. Fischer into the line of the officers.  *See id*.  With that, the Capitol police pepper sprayed the protesters, blinding Mr. Fischer.  The police then escorted him toward an exit, and he left four minutes after entering.  *See id*. & Doc. 49 at 3.

---

[2] Because Congress recessed well before Mr. Fischer's brief return, at least one judge has found that conduct like Fischer's did not interfere with Congress's joint session.  *See, e.g.*, *United States v. Matthew Martin*, No. 1:21-CR-00394, Doc. 41 at 270 (McFadden, J., "find[ing] that the proceedings had been halted well before he entered the Capitol building and that they did not resume until long after he left. [] Find[ing] that the government has not proven beyond a reasonable doubt that he disrupted congressional proceedings").

[3] While Mr. Fischer used profanity and harsh language, when he said "charge," he had not yet entered the Capitol.  *See id*.  And the context attending the "charge" utterances reflects an ill-timed joke.  No one in the crowd reacted.  *See id*.

## 2. Miller

As with Appellee Fischer, the government's factual recitation for Mr. Miller is not drawn from the indictment but from its criminal complaint and other filings.  App. 75-78.

It represents that on January 6, "around 2:40 p.m., Mr. Miller entered the Capitol building, where he joined a crowd of rioters pushing against a line of law enforcement officers in the Rotunda."  Appellant's Br. at 9.  Prior to January 6, Mr. Miller "made statements on his Facebook account that he was coming to D.C. for 'this trump shit,' that a 'civil war could start,' and that he intended to bring with him 'a grappling hook and rope and a level 3 vest' as well as a helmet, mouth guard, and a 'bump cap.'" *Id.*  The government adds that, after January 6, "Miller said he had 'charged the back gates' [of the Capitol] himself" and that he commented "assassinate AOC" on social media.  *Id.* 10.

## 3. Lang

Video surveillance from January 6 shows Mr. Lang entering the Lower West Terrace tunnel of the Capitol at about 2:41 p.m.  App.  21-22.  Joining the protestors, Mr. Lang can be overheard saying, among other things, "this is our house," "you are enemies of the state," and "we are getting squished to death," "the cops are squishing us to death."

7

Mr. Lang and another individual pushed against a door, and the government claims that, on different occasions, he assaulted officers. App. 22-23, 29-30. According to the government, Mr. Lang left and reentered the building on a couple of occasions. App. 24-25. And, notably, Mr. Lang appears to have asked officers to help an unconscious woman, and he dragged another individual out from underneath the crowd. App. 27.

## B.   Procedural History

A grand jury returned a seven-count indictment, charging Fischer, Miller, and Lang with, as noted, several riot-related offenses. App. 443-46. But the government also included a count for obstructing an official proceeding under Section 1512(c) of the Victim, Witness, or Informant Tampering statute. App. 444. Fischer, Miller, and Lang moved, among other things, to dismiss this count. And the district court granted their motions based on its opinion in *United States v. Miller*, No. 1:21-CR-00119, Doc. 72.

1. **The district court carefully construed Section 1512(c) consistent with its language, structure, history, and the relevant interpretive cannons.**

In *Miller*, the district court emphasized that it must exercise restraint in assessing the reach of a criminal statute. App. 96-97. And that such restraint corresponds with the rule of lenity. App. 97-98. As for the reach of Section 1512(c), the court began by pointing out "that three readings of the statute are possible, but only two are plausible." App. 100.

The first, advanced by the government, is that subsection (c)(2), which begins with the term "otherwise" and then states, "obstructs, influences, or impedes any official proceeding or attempts to do so[,]" constitutes a "clean break" from subsection (c)(1), setting forth an omnibus clause independent of the preceding subsection. App. 100-01. But the court identified several problems with the government's interpretation. One, it failed to give meaning to the term "otherwise," rendering it surplusage. App. 101. Two, such interpretation conflicted with how the Supreme Court had construed "otherwise" in *Begay v. United States*, 553 U.S. 137 (2008), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591, 604 (2015), which addressed a different statute but a similar statutory framework. App. 101-02. And

three, the authority cited for the clean break interpretation conflicted with the Supreme Court's reasoning.  App. 103.

Next, the court addressed whether subsection (c)(1) merely provides examples of conduct that violate subsection (c)(2).  Here, the court acknowledged that this construction gave effect to the term "otherwise"  by tethering the subsections through a common link to an "official proceeding."  App. 104.  But the court found that this construction had its own problems.  For example, if the common element is an official proceeding, then "otherwise" is superfluous.  *Id*.  And both subsections reference official proceedings.  App. 105.  The court explained that the structure of Section 1512(c) cut against construing subsection (c)(1) as merely including examples of conduct violating (c)(2).  In the court's view, a reasonable reader would not expect the principal offense (indeed, only) to be in the second subsection with examples preceding it.  App. 105.

Finally, the court considered whether subsection (c)(2) constituted a residual clause for (c)(1).  Under this construction, the word "otherwise" links the two subsections with the commonality being the conduct proscribed in (c)(1).  *Id*.  And it squared with the Supreme Court's reasoning and holding in *Begay*.  App. 106.  For instance,

subsection (c)(2) ensures that by criminalizing specific acts in (c)(1) that impair object evidence Congress was not underinclusive in proscribing interference with the availability and integrity of all types of evidence. App. 107.

Turning to statutory context, the court viewed it as supporting a narrow focus in subsection (c)(2).  For instance, the court noted that Congress aimed Section 1512's other subsections at discrete conduct in narrow circumstances, like killing a person to prevent their attendance at an official proceeding.  App. 109 (citing 18 U.S.C. § 1512(a)(1)(A)).

Looking next to the statutory history, the court found that it too reinforced construing subsection (c)(2) as a catchall.  App. 112.  On this point, the court traced the development of Section 1512(c) and observed that it filled in a missing gap, that is, not requiring that the obstructor act through another person.  App. 114.  This circumscribed aim also bolstered a narrow purpose interpretation.  *Id.*

Last, the court addressed the legislative history while acknowledging its limited role.  App. 115.  Here, the court recounted the history surrounding Section 1512(c)'s enactment as part of the Sarbanes-Oxley Act of 2002.  As the court emphasized, nearly all of the legislative history cited the purpose of the Section 1512(c) amendment

as deterring fraud and abuse by corporate executives, such as shredding potentially incriminating documents, as occurred with Enron and Arthur Anderson, LLP. *See* 115-16. In other words, federal authorities could prosecute individuals under Section 1512(c) when they acted alone and before the existence of a proceeding and a subpoena. App. 116.

In sum, the district court held that the conduct of Miller, Fischer, and Lang on January 6, which was not linked to any evidence impairment, fell outside Section 1512(c)'s contemplation. App. 12 (minute order), 117-18, 508-09.

## 2. The government moved for reconsideration, and the district court further explained its reasoning supporting the dismissal of the obstruction count.

In the wake of the ruling in *Miller*, the government moved for reconsideration, asserting three grounds. First, the government argued that it had failed to present the issue over the degree of ambiguity necessary before a court can resort to the rule of lenity. App. 397. Second, the government maintained that the district court's interpretation of Section 1512(c) was incorrect because it conflicted with the decisions of other judges in the district. App. 398. And finally, the government contended that the district court's dismissal of the

obstruction count was premature.   App. 399.

Starting with the lenity issue, the district court noted that the parties joined on this issue, discussing it in their filings.  *See* App. 397-98.  So it was properly before the court.  And the court grasped the relevant standard.  *See id*.

Turning to the second point, the district court acknowledged contrary decisions interpreting Section 1512(c).  App. 398.  But the court observed that those judges reached their conclusions for different reasons.  *Id.* at n.1.  For example, the court emphasized that some judges did not consider the relevance of the term "otherwise" in subsection (c)(2), others mentioned it but did not discuss its import, some suggested that it presented a key interpretive question, some viewed it as a "carveout," and others considered it a link between the subsections.  *Id.*  The district court thus declined to reconsider its ruling.  Indeed, as the court noted, the varying interpretations of Section 1512(c) supported applying the rule of lenity.  App. 399.

As for the final reconsideration basis—whether dismissal was premature—the court found that a couple of reasons supported its holding.  One, the government had not advanced such argument in response to Miller's motion.  App. 399.  And, in any event, the court

13

explained that, historically, indictments must contain the essential

facts constituting the charged offense.  App. 400-03.  And this rule, the

court found, was particularly true in the context of a broadly worded

statute.  App. 403.  Finally, in reaching this conclusion the court also

had the benefit of oral argument addressing the adequacy of the

indictment.  *See* SApp. at 12-30.

## SUMMARY OF THE ARGUMENT

The district court correctly construed Section 1512(c)(2) as an evidence-impairment crime. The text of Section 1512(c), and every provision in the statute, focus on discrete acts intended to affect the availability or integrity of evidence used in an official proceeding. This focus is also reflected in the statute's title and the statutory history, which reveals Congress's efforts to protect the integrity of investigations and evidence. And the legislative history tracks this purpose and no other. Before January 6, no court had applied Section 1512(c)(2) to conduct not intended to affect the availability or integrity of evidence and no defendant had been convicted of an obstruction-of-Congress offense outside the context of a legislative inquiry or investigation. Section 1512(c) therefore does not extend to protest at the Capitol that is not aimed at interfering with Congress's inquiries and investigations.

The district court also properly dismissed the obstruction counts, as they did not reach the conduct at issue and as the government included no facts in its indictments that would otherwise satisfy Section 1512(c).

## ARGUMENT

The government maintains that "nothing in Section 1512(c)(2)'s text, structure, or history imposes a requirement that a defendant must take some action with respect to a document, record, or other object." Appellant's Br. at 17. But the district court's ruling corresponds with the statutory text, its history, legislative history, circuit precedent and common sense. And the government has conceded, though implicitly, that the extension of Section 1512(c)(2) to acts not intended to affect the availability or integrity of evidence is unprecedented.[4]

Indeed, the government has interpreted Section 1512(c) consistent with the district court's construction. *See generally* Memorandum from Deputy Att'y Gen. Rod Rosenstein & Ass't Att'y Gen. Steven Engle to Att'y Gen. William P. Barr at 2 (June 8, 2018) (asserting that Section 1512(c)(2) is confined to "acts of evidence impairment");[5] Memorandum from Ass't Att'y Gen. Office of Legal Counsel, Steven Engle & Principal

---

[4] In other cases, however, the government has been explicit about this novel extension of Section 1512(c). *E.g.*, *United States v. Montgomery*, 1:21-CR-00046, Doc. 53 at 31 (D.D.C. 2021) ("[A]dmittedly this type of conduct I'm not aware of having been prosecuted under this statute before").

[5] Available at: https://www.documentcloud.org/documents/5638848-June-2018-Barr-Memo-to-DOJ-Muellers Obstruction.

Assoc. Deputy Att'y Gen., Edward C. O'Callaghan to Att'y Gen. William P. Barr at 3 (March 24, 2019) (emphasizing that potentially obstructive conduct did not involve efforts to impair or alter documentary or physical evidence).[6] *See also infra* at 44 n.10.

Secondarily, the government challenges the district court's application of the rule of lenity. Appellant's Br. at 17. Yet the government cannot dispute that Section 1512(c) is capable of differing constructions. The inconsistent district court opinions cited in *Miller* confirm this, as do opinions addressing similar residual clause language in other statutes. *E.g.*, *Johnson v. United States*, 576 U.S. 591, 601 (2015) (addressing the "or otherwise involves conduct" language in 18 U.S.C. § 924(e)(2)(B)(ii)). In any event, the district court's exercise of restraint in evaluating the reach of a criminal statute and the parallel principle of lenity are appropriate here. App. 97.

---

[6] Available at:
https://www.nytimes.com/interactive/2022/08/24/us/politics/justice-dept-memo-barr.html

**A.   The district court's holding corresponds with the text, statutory structure, statutory history, and legislative history of Section 1512(c).**

**1.   The district court correctly construed the text of Section 1512(c).**

As the district court acknowledged, any evaluation of Section

1512(c) begins with its text.  App. 100.  That text provides:

> **Tampering with a witness, victim, or an informant**
>
> *   *   *
>
> (c) Whoever corruptly—
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2) *otherwise obstructs, influences, or impedes any official proceeding*, or attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c)(1-2) (emphasis added).  The district court—

consistent with the wording and structure of the statute—construed

subsection (c)(2) as a residual clause.  App. 106-08.   That construction

is compelled by the interpretive principles that: (i) courts must give

effect to every word and phrase in a statutory provision, (ii) general

words must not be construed to render meaningless specific words

previously used in the same provision (*ejusdem generis*), and (iii)

statutory words are known by the company they keep (*noscitur a sociis*).

*See Yates v. United States*, 574 U.S. 528, 543-46 (2015); *Setser v. United

States*, 566 U.S. 231, 239 (2012); *Donnelly v. Fed. Aviation Admin.*, 411

F.3d 267, 271 (D.C. Cir. 2005).

Subsection (c) is a complete sentence with subsections (c)(1) and

(c)(2) as grammatically dependent clauses.  Subsection (c)(2)'s *actus

rei*—"obstruct[ing], influenc[ing], or imped[ing] any official

proceeding"—are general words that follow the more specific list of

*actus rei* in subsection (c)(1): "alter[ing], destroy[ing], mutilat[ing], or

conceal[ing] a record, document or other object . . . with the intent to

impair the object's integrity or availability for use in an official

proceeding[.]"  *Yates*, 547 U.S. at 543-46.  Subsection (c)(2)'s generally

worded *actus rei* therefore "keep company" with the more specific

crimes nearby in subsection (c)(1).  *Id.*

The district court construed subsection (c)(2)'s general words as

criminalizing acts similar in kind to, and similar in degree of

obstruction posed by, the evidence-impairment crimes in the

immediately preceding subsection but which acts are undertaken "in a

different way or manner."  App. 100 (citing *Otherwise*, WEBSTER'S THIRD

New Int'l Dictionary of the English Language Unabridged (3d ed. 2002)).  That means subsection (c)(2) criminalizes acts different from the object-impairment crimes listed in subsection (c)(1) but which are still intended to affect the integrity or availability of evidence, *e.g.*, interfering with witness testimony.  Interpreting Section 1512(c)(2) in that way, the district court gave effect not just to subsection (c)(2) but also to (c)(1).

That interpretation is bolstered by a construction the Supreme Court gave to a similar residual clause in *Begay*.  There, the Court construed the scope of the residual clause in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii).  The relevant subsection provides,

> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year. . . that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).

The question in *Begay* was whether a driving under the influence ("DUI") offense constituted a crime that, under Section 924(e)(2)(B)(ii), "otherwise involves conduct that presents a serious potential risk of physical injury to another."  The Court determined that the proximity of the listed crimes "burglary, arson, extortion, or crimes involving the use of explosives" to a general crime "otherwise involv[ing] conduct that presents a serious potential risk of physical injury to another" was enough to "indicate[] that [the 'otherwise' clause] covers only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.'"  *Begay*, 553 U.S. at 142 (emphasis original). The Court continued:

> If Congress meant the latter, i.e., if it meant the statute to be all-encompassing, it is hard to see why it would have needed to include the examples at all.  Without them, [§ 924(e)(2)(B)(ii)] would cover *all* crimes that present a "serious potential risk of physical injury." *Ibid*. Additionally, if Congress meant [§ 924(e)(2)(B)(ii)] to include *all* risky crimes, why would it have included [§ 924(e)(2)(B)(i)]? A crime which has as an element the "use, attempted use, or threatened use of physical force" against the person (as [§ 924(e)(2)(B)(i)] specifies) is likely to create "a serious potential risk of physical injury" and would seem to fall within the scope of [§ 924(e)(2)(B)(ii)]. . . .

21

> [Thus], "to give effect . . . to every clause and word" of this statute, we should read the examples as limiting the crimes that [§ 924(e)(2)(B)(ii)] covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves.

*Begay*, 553 U.S. at 143 (emphasis original).  In conclusion, *Begay* held that a DUI offense was not a violent felony under the "otherwise clause" of Section 924(e)(2)(B)(ii).

It's no different here.  If Congress meant Section 1512(c)(2) to cover all acts that obstruct, influence, or impede an official proceeding, "it is hard to see why it would have needed to include" subsection (c)(1) at all.  *Begay*, 553 U.S. at 143.  Indeed, it is hard to see why Congress would have needed the rest of Section 1512.  As in *Begay*, the "otherwise" clause in subsection (c)(2) here reaches "crimes that are roughly similar, in kind as well as degree of [obstruction] posed, to the examples" in subsection (c)(1).  *Id.*  Acts intended to "otherwise" affect the integrity or availability of evidence are "similar in kind" to the spoliation crimes listed in subsection (c)(1) because all of the subsection (c) crimes (indeed all of Section 1512's crimes) implicate evidence impairment.  They are also similar to the subsection (c)(1) crimes in "degree of [obstruction] posed" because evidence tampering

permanently impairs a proceeding's integrity, unlike, for example, obstruction of a proceeding by protesting in a courtroom.

*Begay*'s construction dovetails with that given to other residual clauses. Take the former career-offender residual clause in the Sentencing Guidelines, U.S. SENT'G GUIDELINES MANUAL § 4B1.2(a) (U.S. SENT'G COMM'N 2016). Courts construed it as limited to conduct similar to those crimes listed before the term "otherwise." *E.g.*, *United States v. Stinson,* 592 F.3d 460, 564 (3d Cir. 2010); *United States v. Crews*, 612 F.3d 1131, 1134 (9th Cir. 2010).

> **a.  The government's contrary construction diverges from the statutory text and would create other interpretive problems over the scope of Section 1512(c)(2).**

The government's interpretation of subsection (c)(2) leaves the *actus rei* in isolation. Appellant's Br. at 20-21. Thus, any act that corruptly obstructs, influences, or impedes an official proceeding would be criminalized without regard to whether it affects evidence. *Id.* That construction does not give effect to the evidence-impairment provisions in subsection (c)(1) because subsection (c)(2) would render those more specific provisions unnecessary. The government attempts to

23

distinguish *Begay* rather than square its construction with the case's interpretive rule.  It fails.

First, the government argues that Section 924(e)(2)(B)(ii) is distinguishable from Section 1512(c) because the "otherwise" clause in subsection (c)(2) is "set off" by a semicolon and a "line break" from the more specific crimes in subsection (c)(1).  For this reason, it argues, there is no "list" and *ejusdem generis* "does not apply."  Appellant's Br. at 30-32.  But *Begay* did not cite *ejusdem generis*, relying instead on the principle that a statute must be interpreted as a whole to "give effect to every clause and word," *Begay*, 553 U.S. at 143, a canon closer to *noscitur a sociis*.  And the government itself cites authority holding that, so far from imposing any midsentence semicolon-and-line-break exception, the *noscitur a sociis* canon considers terms in the same "company" even when merely placed in a common "overall statutory context."  Appellant's Br. at 32 (citing *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 226 (2008)).

In any event, even if *Begay* applied the *ejusdem generis* canon, the decision itself forecloses the government's line break and semicolon argument.  The Court interpreted Section 924(e)(2)(B)(ii) in light of

24

subsection (B)(i), clauses separated by a semicolon and line break. *Begay*, 553 U.S. at 142.

Second, the government argues that *Begay* does not apply here because the district court overemphasized the significance of the term "otherwise" in the disposition of that case. "Otherwise," the government contends, was merely a "tertiary rationale" in *Begay*. Appellant's Br. at 33. But whatever the importance of that word in *Begay*, the opinion's broader principle that courts must give effect to every clause and word in the relevant provision counsels against the government's reading of subsection (c)(2).

Third, the government warns that applying *Begay* to Section 1512(c)(2) would "give rise to unnecessarily complex questions" and "no reported cases have adopted the district court's interpretation." Appellant's Br. at 36. That's backwards. Before January 6 no court had adopted the government's interpretation that Section 1512(c)(2) reaches acts not intended to affect evidence integrity or availability. Indeed, every case cited by the government merely holds that the subsection may reach acts that interfere with non-object evidence, such as witness testimony, not that the provision reaches acts wholly unrelated to evidence impairment. *See, e.g.*, *United States v.*

*Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014) (soliciting tips from corrupt cops to evade surveillance constituted evidence sufficient for jury to find "efforts were out of a desire to influence what evidence came before the grand jury"); *United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir. 2009) (disclosing identity of undercover agent to subject of grand jury drug investigation evidence sufficient to find purpose was to "thwart evidence from reaching the investigation"); *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (attempting to obtain false statement to be used in pending federal charges sufficient to satisfy Section 1512(c)(2)); *United States v. Carson*, 560 F.3d 566, 585 (6th Cir. 2009) (making false statements "directly to the grand jury itself" sufficient to satisfy Section 1512(c)(2)); *United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013) (false responses to interrogatories that were filed in the official proceeding sufficient to satisfy Section 1512(c)(2)); *United States v. Ring*, 628 F. Supp. 2d 195, 223 (D.D.C. 2009) (making false statements to outside counsel "so that counsel would provide misleading information to the grand jury"). These authorities follow *Begay*'s application to Section 1512(c)(2). The subsection (c)(2) crimes in those cases are similar in kind, as well as in degree of obstruction

posed, to the document-spoliation crimes in subsection (c)(1), as they all affect the integrity or availability of evidence.

The government's evidence-free interpretation of Section 1512(c)(2), however, does raise "unnecessarily complex questions." Appellant's Br. at 36. For example, if subsection (c)(2) reaches all acts that obstruct, influence, or impede a proceeding, it would overlap with the crime in subsection (d)(1) of harassing a person and thereby delaying or preventing a person from "attending or testifying in an official proceeding." 18 U.S.C. § 1512(d)(1). Yet the latter offense has a statutory maximum sentence of three years, while subsection (c)(2) has a 20-year maximum. The government does not explain how courts are supposed to decide when harassment is a three-year crime or when it is a 20-year one.

> **b.** **The district court appropriately applied the rule of lenity and exercised restraint in evaluating the reach of Section 1512(c)(2).**

The government contends that the rule of lenity does not apply because whatever ambiguity attends Section 1512(c)(2) and its reach, it is not sufficiently "grievous." Appellant's Br. at 56. But it's far from clear that ambiguity must meet some sort of threshold standard of grievousness before the rule of lenity applies. *See Wooden v. United*

*States*, 142 S. Ct. 1063 (2022) (Gorsuch and Sotomayor, J.J.,

concurring) (tracing the history of using "grievous" when describing an

ambiguity).[7]  Indeed, the government's argument over interpreting

subsection (c)(2) in response to the district court's contrary construction

itself establishes ambiguity at the least.  So do the Attorney General

and Office of Legal Counsel's memoranda respecting the scope of

Section 1512(c) that reject the government's evidence-free

interpretation here.  *See supra* at 16-17 & nn.5-6.  And as the district

court pointed out, even among the judges who agreed with the

government, there was no consensus on how they construed subsection

(c)(2)'s language.  *See* App. 398 n.1 (collecting cases).

In any event, the rule of lenity corresponds with the precept that

penal laws are construed strictly.  *See United States v. Wiltberger*, 18

U.S. (5 Wheat) 76, 95 (1820).  Ambiguities are thus resolved in the

defendant's favor.  *See Liparota v. United States*, 471 U.S. 419, 427

(1985).  And this rule of construction obliges three core constitutional

---

[7] *Accord Abramski v. United States*,  573 U.S. 169, 204 (2014) (Scalia, J.,
dissenting) ("[C]ontrary to the miserly [grievous ambiguity] approach,
the rule of lenity applies whenever, after all legitimate tools of
interpretation have been exhausted, a reasonable doubt persists
regarding whether Congress has made the defendant's conduct a federal
crime.") (citations omitted).

concerns—notice as part of due process, separation of powers, and a preference for liberty.  *See United States v. Nasir*, 17 F.4th 459, 474 (3d Cir. 2021) (en banc) (Bibas, Ambro, Jordan, Krause, and Restrepo, J.J., concurring).

Moreover, this is not the first time a court applied the rule of lenity to amendments from the Sarbanes-Oxly Act.  *See Yates*, 574 U.S. at 547-48.  In *Yates*, the Court explained, "if our recourse to traditional tools of statutory construction leaves any doubt about the meaning of 'tangible object,' as that term is used in § 1519, we would invoke the rule that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'"  *Id*. (citations omitted).  Finally, even if there were room for debate over Section 1512(c)(2)'s ambiguity, ex post facto principles embodied in the Due Process Clause bar courts from retroactively applying novel judicial constructions "to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope."  *United States v. Lanier*, 520 U.S. 259, 266 (1997) (citing *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964)).   The government correctly acknowledged that its construction of subsection (c)(2) is novel, *supra* at 16 n.4, for despite decades of protest at the Capitol, no court had ever construed Section 1512(c)(2) to reach conduct

unrelated to evidence impairment.  Appellees had no warning, much less "fair warning."  *Lanier*, 520 U.S. at 266.

## 2.  The statutory context and structure of Section 1512 square with the district court's holding.

The district court did not construe the words in Section 1512(c) in a vacuum, but appropriately looked to their context and placement within the statutory scheme.  *See Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019).  The "no-elephants-in-mouseholes" canon counsels against an interpretation in which Congress "alter[s] the fundamental details of a regulatory scheme in vague terms or ancillary provisions." *Whitman v. American Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001). The government's interpretation of the sentence fragment in subsection (c)(2) creates years-long sentencing disparities between it and a nearby provision criminalizing the same conduct, Section 1512(d)(1).  That is nothing if not an elephant in a mousehole.

The government concedes that its interpretation would render superfluous the remaining 16 crimes in Section 1512, as well as those in Sections 1503 and 1505, contrary to the canon against surplusage. Appellant's Br. at 39; *Marx v. General Rev. Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon . . . is strongest when an interpretation would

30

render superfluous another part of the same statutory scheme.").  It

thus argues for application of a counter-canon: surplusage may be

overlooked upon a "'simple' explanation."  Appellant's Br. at 40 (quoting

*United States v. McHugh*, No. 21-453, 2022 WL 1302880 at *8 (D.D.C.

May 2, 2022)).

As explained below—*infra* at 40-42—before the Sarbanes-Oxley

Act, Section 1512 reached "indirect" obstruction, under which the

defendant induced others to tamper with evidence, but did not reach a

defendant's "direct" tampering.  *McHugh*, No. 21-453, 2022 WL

1302880 at *8.  By plugging that "Arthur Andersen loophole" with

Section 1512(c)(2), the government contends, Congress necessarily

intended to make surplusage of the rest of Section 1512, "because

indirect obstruction is only one form of direct obstruction."  *Id.* at *9.

But the government's interpretation creates surplusage not

because it plugs that loophole but because it reaches well beyond the

conduct occasioned by the loophole problem.  The government allows

that every other provision in Section 1512 concerns evidence

impairment.  If subsection (c)(2) was "designed to close the [Arthur

Andersen] loophole," *McHugh*, No. 21-453, 2022 WL 1302880 at *8, it

should not be read to criminalize *every* interfering act—such as protest

31

outside an official proceeding—but acts that "directly" commit the "indirect" evidence-impairment crimes in Section 1512.  Correctly interpreted in that light, subsection (c)(2) creates no surplusage.  For example: to directly withhold a record from an official proceeding in violation of Section 1512(c)(2) is to "otherwise" perform the indirect crime of "induc[ing] any person to . . . withhold a record . . . from an official proceeding," § 1512(b)(2)(A), *i.e.*, it is to perform the "indirect" evidence-impairment crime "in different circumstances: under other conditions."  *Otherwise,* WEBSTER'S THIRD NEW INT'L DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED (2002).  It's because the government's construction criminalizes all obstructive acts, without regard to evidence impairment, that it makes surplusage of Sections 1503, 1505 and 1512.

### 3. The "corruptly" and "nexus" elements cannot salvage the government's interpretation

Implicitly conceding that its interpretation of Section 1512(c)(2) is overbroad, the government urges that the statute's "corruptly" and "nexus" requirements sufficiently "limit its reach."  Appellant's Br. at 48-54.  But its incorrect definition of "corruptly" performs no limiting

function and the nexus requirement is not relevant to this interpretive dispute.

To act "corruptly," the government contends, is to act with any "wrongful purpose." Appellant's Br. at 49.  The government omits that the meaning of the obstruction-of-justice term "corruptly" is context-dependent.  While equating "corruptly" with acting with any "wrongful purpose" is appropriate in the judicial proceeding context, the definition takes on unconstitutional vagueness where the proceeding involves a broader category of circumstances and protected conduct.  *See United States v. Aguilar*, 515 U.S. 593, 616-17 (1995) (Scalia, J., concurring in part and dissenting in part); *United States v. North*, 910 F.2d 843, 882 (D.C. Cir. 1990); *United States v. Reeves*, 752 F.2d 995, 999 (5th Cir. 1985).

As the Fifth Circuit explained in *Reeves*, jury instructions equating "corruptly" with acting with an "evil, immoral or wrongful" purpose have only applied in the judicial proceeding context, because "where a defendant has endeavored to obstruct a [judicial] proceeding, the advantage inconsistent with the duties and rights of others is so clear that courts have often been willing to impute the desire to obtain [] an [unlawful] advantage on a per se basis."  752 F.2d at 999.  "Merely

33

prohibiting 'bad,' 'evil,' and 'improper' purposes is very probably insufficient where . . . a statute reaches . . . a broad[er] category of circumstances." *Id*. Congressional proceedings are classic examples of "a broader category of circumstances," for, unlike in judicial proceedings, "[n]o one can seriously question that people constantly attempt, in innumerable ways, to obstruct or impede congressional committees." *North*, 910 F.2d at 882. Thus, in *United States v. Poindexter*, this Court determined that an any-wrongful-purpose definition of "corruptly" was unconstitutionally vague as applied in the obstruction-of-Congress context. 951 F.2d 369, 386 (D.C. Cir. 1991).

It is not hard to see why the any-wrongful-purpose definition of "corruptly" is also unconstitutionally vague in this obstruction-of-Congress case and thus does not limit the reach of the government's construction of Section 1512(c)(2). Hundreds of protesters who entered the Capitol on January 6 were charged with the Class B misdemeanor of demonstrating in the Capitol, 40 U.S.C. § 5104(e)(2)(G), while hundreds of others who did the same thing, like Fischer, have been charged with felony obstruction. If one "demonstrates" in the Capitol during an "official proceeding," one cannot avoid "influenc[ing]" that proceeding in some manner, or at least that is one's attempted object.

18 U.S.C. § 1512(c)(2). Equating "corruptly" with acting with any "wrongful purpose" fails to clarify this liminal vagueness. Those charged under Section 1512(c)(2) and who allegedly acted with a "wrongful purpose" shared that purpose with the misdemeanants who "demonstrated" against electoral vote certification in the Capitol. A "wrongful purpose" definition of "corruptly" thus adds no clarifying content to the vagueness in the government's decoupling of the Section 1512(c)(2) offense from investigations and evidence.

Without conceding that an appropriate definition of "corruptly" would save the government's construction of Section 1512(c)(2), a district court decision that the government relies on has determined that a proper definition of that element requires proof that the defendant acted with the intent to obtain an unlawful benefit for himself or an associate. *United States v. Montgomery*, 578 F. Supp. 3d 54, 75 n.5 (D.D.C. 2021); *see also United States v. Pasha*, 797 F.3d 1122, 1132 (D.C. Cir. 2015) (adopting unlawful-advantage definition); *Reeves*, 752 F.2d at 999; *Marinello v. United States*, 138 S. Ct. 1101, 1114 (2018) (Thomas, J., dissenting) ("'[C]orruptly' requires proof that the defendant not only knew he was obtaining an '*unlawful benefit*' but that his 'objective' or 'purpose' was to obtain that *unlawful benefit*.") (citing

21 Am. Jur. 2d, *Criminal Law* § 114 (2016)) (emphasis added); Black's

Law Dictionary 414 (rev. 4th ed. 1951) ("Corruptly" "generally imports

a wrongful design to acquire some pecuniary or other advantage").[8]

Finally, the "nexus" element requires the government to prove

that the defendant's obstructive act was linked to a specific and

reasonably foreseeable official proceeding. *E.g.*, *United States v. Young*,

916 F.3d 368, 386 (4th Cir. 2019) (collecting cases). But the vagueness

and overbreadth of the government's interpretation lies not in the link

between a defendant's acts and a proceeding but in the uncertainty

surrounding which acts are criminal when the obstruction-of-Congress

offense is decoupled from investigations and evidence.

### 4. The statutory and legislative history of Section 1512(c) bolster the district court's interpretation and reflect a focus on investigations and evidence.

The government invites reliance on the statutory and legislative

history as a basis for its preferred interpretation of Section 1512(c)(2).

---

[8] The government contends that in *Poindexter* this Court "declined to adopt" an unlawful-advantage standard. Appellant's Br. at 49. But the court cited approvingly to *Reeves* and determined that it did not have to reach the question. *Poindexter*, 951 F.2d at 386. Similarly, the government argues that the unlawful-advantage definition only applies in the context of tax obstruction. Appellant's Br. at 49. *Reeves* explains that is not the case and *Montgomery* held that the unlawful-advantage definition may apply to January 6 cases. *Montgomery*, 578 F. Supp. at 75 n.5.

*See* Appellant's Br. at 2-8, 44-47.  But the history the government

includes is incomplete.  And far from supporting the government's view,

it undermines it.

> ### a.   The statutory predecessors to Section 1512 confirm its narrow scope.

As this Court has explained, the meaning and scope of Section

1512 are informed by related obstruction-of-justice provisions in its

statutory lineage.  *Poindexter*, 951 F.2d at 380-84.  Sections 1503, 1505

and 1512 all derive from a 1909 statute, codified at Section 241 of the

Criminal Code, which in turn derived from a similarly worded contempt

statute of 1831.  *Id.* at 380.  Section 241 included two obstruction

offenses: (1) influencing, intimidating or impeding witnesses in court

proceedings; and (2) influencing, obstructing or impeding the "due

administration of justice" in those proceedings.  *Id.* (citing Act of March

4, 1909, ch. 321, § 135, 35 Stat. 1113 (1909)).

In 1940 Congress passed Section 241(a), the direct predecessor to

Section 1505.  *Poindexter*, 951 F.2d at 380 (citing Act of January 13,

1940, ch. 1, § 135(a), 54 Stat. 13 (1940)).  While Section 241(a) retained

Section 241's two-part actus reus structure—separately criminalizing

tampering with witnesses and obstructing the "due administration" of a

proceeding—it expanded the proceedings to which Section 241's prohibitions applied.  While Section 241 applied to proceedings in "any court of the United States," Section 241(a) applied to (1) "any proceeding pending before any department . . . or other agency of the United States" and (2) "inquir[ies] or investigation[s] . . being had by either House, or any committee of either House or any joint committee of the Congress. . ." *Id.* (citing Section 241(a)).  In 1948, Congress recodified Section 241(a) at Section 1505.  Then in 1962, Congress amended the title of Section 1505 to "Obstruction of *proceedings* before departments, agencies and *committees.*" *Id.* (citing Antitrust Civil Process Act, 76 Stat. 551 (1962)) (emphasis added).

With The Victim and Witness Protection Act of 1982 ("VWPA"), Congress created Section 1512, "which prohibits various forms of witness tampering, including many activities that were formerly prohibited by Sections 1503 and 1505." *Poindexter*, 951 F.2d at 382.  Its title was, and is, "Tampering with a witness, victim or an informant." 18 U.S.C. § 1512.  In the VWPA, Congress "transfer[red]" the first type of obstruction offense under Section 1505—tampering with witnesses— to Section 1512.  *Poindexter*, 951 F.2d at 382.  The omnibus clause— covering obstruction of the "due administration" of a proceeding—

remained unaltered in Section 1505.  *Id.*  The VWPA also newly used and defined "official proceeding."  It meant, among other things, "a proceeding before a judge or court of the United States . . ." and "a proceeding before the Congress."  Pub. L. No. 97-291, sec. 4, 96 Stat. 1252.  Congress considered adding an omnibus clause to Section 1512 but declined doing so.  *Poindexter*, 951 F.2d at 383 (citing 128 Cong. Rec. 26,350 (1982)).[9]

A Senate Judiciary Committee Report accompanying the VWPA clarifies what Congress meant—and did not mean—by the phrase "official proceeding."  Before the VWPA, the "current law term [used in obstruction statutes] was 'legal proceedings.'"  S. Rep. No. 532, 97th Cong., 2d Sess. 18 (1982).  By substituting "official proceedings" for "legal proceedings," the legislators intended to convey that "the statute remain applicable in civil and administrative proceedings, where warranted"— not just in "criminal proceedings."  *Id.*  "The term 'official proceeding' is intended to convey th[at] result."  *Id.*

---

[9] On the Senate floor, Senator Heinz, a VWPA sponsor, said that an omnibus clause was "'beyond the legitimate scope of this *witness protection* measure.  It is also probably duplicative of [o]bstruction of justice statutes already on the books.'"  *Poindexter*, 951 F.2d at 383 (quoting 128 Cong. Rec. 26,810 (1982)) (emphasis added).

Taken together, no support exists in Section 1512's statutory history that it extends to a "proceeding" that does not involve investigations and evidence, the interference with which constitutes the offense. For when Congress defined that term, Section 1512's *actus rei* exclusively concerned witness testimony and evidence. 96 Stat. 1250 (§ 1512(a),(b)). Consistent with that fact, before January 6 every obstruction-of-Congress offense charged under Sections 241(a), 1505 and 1512 concerned interference with an inquiry or investigation in Congress. *E.g.*, *Poindexter*, 951 F.2d at 383 (witness lying to congressional committee); *United States v. Kanchanalak*, 37 F. Supp. 2d 1 (D.D.C. 1999) (destroying records subpoenaed by Congress).

> **b.    The Sarbanes-Oxley amendment did not alter Section 1512's focus on inquiries or investigations.**

In the Sarbanes-Oxley Act of 2002, Congress added subsection (c) to Section 1512. 116 Stat. 745. "The Sarbanes-Oxley Act, all agree, was prompted by the exposure of Enron's massive accounting fraud and revelation that the Company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents." *Yates*, 574 U.S. at 535-36. The Senate Report for the Act identified the

so-called Arthur Andersen loophole that Section 1512(c) was designed to

"fix":

> [I]n the current Andersen case, prosecutors have been forced to use the "witness tampering" statute, 18 U.S.C. § 1512, and to proceed under the legal fiction that the defendants are being prosecuted for telling other people to shred documents, not simply for destroying evidence themselves. Although prosecutors have been able to bring charges thus far in the case, in a case with a single person doing the *shredding*, this legal hurdle might present an insurmountable bar to a successful prosecution.

S. Rep. No. 107-146, p. 7 (2002) (emphasis added).

Other provisions in Section 1512 proscribed "indirect" evidence

impairment—*e.g.*, Section 1512(b) "made it an offense to 'intimidat[e],

threate[n], or corruptly presuad[e] *another person*' to shred documents,"

*Yates*, 574 U.S. at 536 (emphasis added).  Congress added Section

1512(c) to reach "*direct*" evidence impairment, such as that

independently undertaken by the defendant.  *Id*. at 542.  Introducing

Section 1512(c), Senator Lott explained that it "*would enact stronger

laws against document shredding*.  Current law prohibits obstruction of

justice by a defendant acting alone, but only if a proceeding is pending

and a subpoena has been issued for the evidence that has been

destroyed or altered.  Timing is very important."  148 Cong. Rec. S6545

41

(daily ed. July 10, 2002) (emphasis added).  He added, "So [Section 1512(c)] would allow the Government to charge obstruction against individuals who acted alone, even if the tampering took place prior to the issuance of a grand jury subpoena.  I think this is something we need to make clear so we do not have a repeat of what we saw with the Enron matter earlier this year." *Id*. (emphasis added).  Then-Senator Joseph Biden referred to Section 1512(c) as "making it a crime for document shredding." *Id*. at S6546.

Senator Hatch commented similarly, clarifying that Section 1512(c),

> *would permit the government to prosecute an individual who acts alone in destroying evidence, even where the evidence is destroyed prior to the issuance of a grand jury subpoena. . . .* [Arthur Andersen prosecutors] had to prove that a person in the corporation corruptly persuaded another to destroy or alter documents, and acted with the intent to obstruct an investigation. [Section 1512(c) would ensure] that individuals acting alone would be liable for such criminal acts.

148 CONG. REC. at S6550 (emphasis added).

Nothing in the statutory or legislative history of Section 1512(c) supports the view that Congress intended subsection (c)(2) to reach acts having no connection to evidence, such as political protest at the Capitol.  Distinct obstruction crimes in Chapter 73 reflect that when

Congress intends to classify political protest as an obstruction offense it uses language different from that in Section 1512(c). *E.g.*, 18 U.S.C. § 1507 (criminalizing certain "picket[ing] or parad[ing]" outside a judge's residence).

### 5. The decisional authority of this Court and others support a narrow focus of Section 1512(c) relating to investigations and evidence.

Although an "official proceeding" is statutorily defined to include "a proceeding before the Congress," Section 1515(a)(1)(B), that only "advances the Court's inquiry so far," as the question then becomes what did Congress mean by "proceeding"? *Montgomery*, 578 F. Supp. 3d at 63. This Circuit has answered that question in the context of Chapter 73's obstruction laws. An investigation is a *sine qua non* of that term in the obstruction-of-justice context.

In *United States v. Kelley*, 36 F.3d 1118 (D.C. Cir. 1994), this Court considered whether an investigation opened by the Office of the Inspector General of the Agency for International Development constituted a "proceeding" as used by Section 1505. *Id*. at 1127. The Court identified the qualities that define such a "proceeding": (1) "investigations" that (2) "involve[] some adjudicative power" or (3) "the power to enhance their investigations through the issuance of

43

subpoenas or warrants." *Id.* (collecting cases). The defendant was also

charged under Section 1512. And the government stipulated that a

"parallel should be drawn between" Sections 1505 and 1512 in defining

"proceeding." *Kelley*, 36 F.3d at 1128.[10] Because Congress's joint

session on January 6 was not held pursuant to its power of inquiry, it

was not a Section 1512 "proceeding." Some district court judges have

distinguished *Kelley* in the January 6 cases. But their reasons for doing

so are conclusory or contradictory.[11]

Likewise, in *United States v. Ermoian*, 752 F.3d 1165 (9th Cir.

2013), the court held that an FBI investigation does not constitute an

"official proceeding" under Sections 1512 and 1515(a). The court

distinguished between lay and legal definitions of "proceeding." The lay

---

[10] This stipulation was authored by the current Attorney General.
*Kelley*, 36 F.3d 1118. The Department of Justice's Criminal Resource
Manual itself explains that Section 1512's "proceeding" is simply a
"restatement of the judicial interpretation of the word 'proceeding' in
§§ 1503 and 1505," with the only difference being that in the latter
provisions the proceeding has to be pending at the time of the offense.
*Official Proceeding*, U.S. Dep't of Just., Just. Manual, § 1730 (2018).

[11] Most distinguish *Kelley* because it concerns Section 1505, a "different
statute." *E.g.*, *Montgomery*, 578 F. Supp. 3d at 67. The statutory
history outlined above and in *Poindexter* reveals, however, that Section
1512's terms were transferred from Section 1505. In any event, these
judges have inconsistently held that the obstruction-of-Congress
offenses in Sections 1505 and 1512(c)(2) overlap—and that's as it should
be. *E.g.*, *McHugh*, No. 21-453, 2022 WL 1302880 at *10.

sense meant "'[t]he carrying on of an action or series of actions; action, course of action; conduct, behavior.'" *Id.* at 1169 (quoting *Proceeding*, OXFORD ENGLISH DICTIONARY). The legal sense: "'[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment; any procedural means for seeking redress from a tribunal or agency; and the business conducted by a court or other official body; a hearing.'" *Id.* (quoting *Proceeding*, BLACK'S LAW DICTIONARY 1241 (8th ed. 2004)). *Ermoian* found the legal definition more fitting. For one, "the descriptor 'official' indicates a sense of formality normally associated with legal proceedings." *Id.* at 1170. "'Proceeding' is a word much used to express the business done in courts' and 'is an act done *by the authority or direction of the court. . .'" Id.* (quoting BLACK'S LAW DICTIONARY 1231 (8th ed. 2004)) (emphasis original).

The Ninth Circuit found this interpretation baked into Section 1512's structure:

> Section 1512 refers to "prevent[ing] the attendance or testimony of any person in an official proceeding"; "prevent[ing] the production of a record, document, or other object, in an official proceeding"; and "be[ing] absent from an official proceeding to which that person has been summoned by legal process." 18 U.S.C. §

45

> 1512(a)(1)(A)-(B), (a)(2)(B)(iv). *The use of the terms "attendance", "testimony", "production", and "summon[]" when describing an official proceeding strongly implies that some formal hearing before a tribunal is contemplated.*

*Ermoian*, 752 F.3d at 1172 (emphasis added).

The district court judges who have accepted the government's novel interpretation that a Chapter 73 "proceeding" need not entail investigations and evidence rely on the same reasoning: Had Congress wished to define "proceeding" that way in Section 1512, it could have "imported" the "inquiry or investigation" language from Section 1505 but did not. A glance at Section 1512's statutory history above establishes that this reasoning is unsound. When Congress defined "official proceeding," Section 1512's *actus rei* were exclusively linked to acts intended to interfere with investigations and evidence related to, or used in, such proceedings. And this Court has held that the VWPA merely transferred the witness tampering crime from Section 1505 to Section 1512. *Poindexter*, 951 F.2d at 383. Thus, it does not follow from Congress's decision not to "import" the phrase "inquiry or investigation" into Section 1512 that Congress intended to expand the preexisting legal definition of "proceeding" to include assemblies not involving investigations, witnesses, or evidence. It would be nonsensical for

Congress to expand the definition of "proceeding" in an obstruction statute to encompass legislative functions unrelated to its power of inquiry and simultaneously create no offense pertaining to those evidence-free "proceedings."  As shown above, Congress explained that the term "official proceeding" was merely meant to capture "civil and administrative proceedings" that involve the administration of justice and not only criminal proceedings.  *Supra* at 39.

### 6.   The government's interpretation of Section 1512(c)(2) would lead to absurd results.

The government's investigation-free definition creates absurdity. Consider a hypothetical, which now constitutes felonious, corrupt influencing of Congress, according to the government: A firearms lobbyist wheedles a senator to limit federal spending on research into gun-related fatalities.  A markup on relevant legislation will soon take place.  The lobbyist gives and promises nothing of value in return.  A text from the lobbyist to his friend later turns up: "I drink too much because my work is evil."  Thus, under the government's construction of Section 1512(c)(2), the lobbyist "influenced" an "official proceeding" and did so "corruptly" because he acted with a "wrongful purpose."  The

absurdity here lies precisely in the lack of any connection between the defendant's acts and a congressional investigation.

In another absurd result, the government's construction collapses any distinction between the Class B demonstrating-in-the-Capitol misdemeanor, 40 U.S.C. § 5104(e)(2)(G), and Section 1512 liability carrying a 20-year statutory maximum sentence. *Supra* at 34. By decoupling Section 1512(c) from investigations, the government's interpretation creates unconstitutional vagueness at the boundary separating six-month- and 20-year-maximum sentences. *United States v. Lanier*, 520 U.S. 259, 266 (1997) (court may not enforce "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application").

Nor does the government's interpretation draw the line at unlawful entry into the Capitol or physical violence. Dozens of January 6 defendants have been charged under Section 1512(c)(2) who neither entered the Capitol nor engaged in violence. *E.g.*, *United States v. Stefanie Hazelton*, 21-CR-30 (D.D.C. 2021). If every act that "influences" Congress done with a "wrongful purpose" is a felony, the government's interpretation would criminalize protected activity. The

Capitol Grounds are a public forum for political protest.  *See Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575 (D.D.C. 1972) (three-judge panel) *sum. aff'd,* 409 U.S. 972 (1972); *Lederman v. United States*, 291 F.3d 36, 39 (D.C. Cir. 2002) (East Front steps of Capitol a public forum).  Thus, even if the government's interpretation were plausible, the Court should apply the canon of constitutional avoidance to define "proceeding" as it did in *Kelley*, "on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts."  *Clark v. Suarez Martinez*, 543 U.S. 371, 382 (2005).

**B.    The district court properly dismissed the obstruction counts under Section 1512(c) consistent with Criminal Procedural Rule 12(b)(3)(v) when the alleged conduct, participating in the Capitol riot, fell outside the purview of the Witness, Victim, or Informant Tampering statute in Section 1512(c).**

The indictments here alleged that Appellees "obstruct[ed], influence[d], and impede[d] an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote[.]"  App. 55, 85-86, 444.  They allege no facts in support.  Nor do they allege what constituted the *actus reus*.  The government argues that these pleadings satisfy Criminal Procedural Rule 7.

Appellant's Br. at 61-66.  If so, that Rule is a dead letter.  FED. R. CRIM. P. 7(c)(1) (indictment must contain a "definite written statement of the essential facts constituting the offense charged").

"It is an elementary principle of criminal pleading that where the definition of an offense includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species—it must descend to particulars."  *United States v. Hillie*, 227 F. Supp. 3d 57, 71-72 (D.D.C. 2017) (internal quotation marks omitted).  As shown above, Section 1512(c)(2)'s *actus rei* could not be more generic under the government's construction; indeed the government calls it a "catchall provision." Appellant's Br. at 28.  And because the government has decoupled Section 1512(c)(2) from investigations and evidence, those *actus rei* are untethered to identifiable functions of any proceeding.  Corruptly obstructing/influencing Congress could run the gamut from loudly pogo sticking outside the Capitol to lobbying for any "wrongful purpose."

The district court correctly found that "nothing in Count Three informs the Appellees of what actions they are alleged to have taken with respect to [evidence.]"  Implicitly conceding the point, the government contends that the "proper" remedy was a bill of particulars.

50

Appellant's Br. at 63 n.9.  Not so.[12]  As the district court found, "'courts have long held that, while a valid indictment can be clarified through a bill of particulars, an invalid indictment cannot be saved by one.'" App. 407 (quoting *Hillie*, 227 F. Supp. 3d at 81).[13]

---

[12] Parenthetically, if the district court's orders (dismissing the individual counts *without prejudice*) could have been easily resolved by a bill of particulars, then they may not satisfy the limited government appeal statute.  *See* 18 U.S.C. § 3731 (allowing government appeals from orders dismissing the indictment or information).

[13] The government suggests electoral vote certificates are "evidence." Appellant's Br. at 59.  But that's a category mistake.  Evidence is "something (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact."  *Evidence*, BLACK'S LAW DICTIONARY (11th ed. 2019).  A ballot is not created or employed to "prove or disprove" an "alleged fact."  It is "[a]n instrument, such as a paper or ball, used for casting a vote."  *Ballot*, BLACK'S LAW DICTIONARY (11th ed. 2019).

**CONCLUSION**

For these reasons, Appellees request that this Court affirm the

district court orders dismissing the counts under 18 U.S.C. § 1512(c).

Respectfully submitted,

*/s/ Frederick W. Ulrich*                          */s/ F. Clinton Broden*
FREDERICK W. ULRICH, ESQ.              F. CLINTON BRODEN, ESQ.
Asst. Federal Public Defender              Broden & Mickelsen
                                                              2600 State Street
AMANDA R. GAYNOR, ESQ.               Dallas, TX 75204
Staff Attorney                                        214-720-9552

100 Chestnut Street, Suite 306          */s/ Nicholas D. Smith*
Harrisburg, PA 17101                         NICHOLAS D. SMITH, ESQ.
717-782-2237                                      David B. Smith, PLLC
                                                              1123 Broadway, Ste. 909
                                                              New York, NY 10010

                                                              */s/ Steven A. Metcalf*
                                                              STEVEN A. METCALF, II, ESQ.
                                                              Metcalf & Metcalf, P.C.
                                                              99 Park Avenue
                                                              New York, NY 10016

Dated: September 14, 2022

## CERTIFICATE OF COMPLIANCE

Counsel for Appellees certify under Appellate Procedural Rule 32(g) that this brief contains 9,791 words, excluding the parts of the brief exempted by Rule 32(f) and D.C. Circuit Rule 32(e)(1), and therefore complies with the type-volume limitation of Rule 32(a)(7)(B). This brief has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

*/s/ Frederick W. Ulrich*
FREDERICK W. ULRICH, ESQ.
Asst. Federal Public Defender

*/s/ F. Clinton Broden*
F. CLINTON BRODEN, ESQ.
Broden & Mickelsen

*/s/ Nicholas D. Smith*
NICHOLAS D. SMITH, ESQ.
David B. Smith, PLLC

*/s/ Steven A. Metcalf*
STEVEN A. METCALF, II, ESQ.
Metcalf & Metcalf, P.C.

Date:  September 14, 2022

## CERTIFICATE OF SERVICE

Counsel for the Appellees certify that we served on this date a copy of the attached brief of Appellees by Electronic Case Filing, or by placing a copy in the United States mail, first class in Harrisburg, Pennsylvania, addressed to:

JAMES I. PEARCE, ESQUIRE
U.S. Department of Justice
*james.pearce@usdoj.gov*

*/s/ Frederick W. Ulrich*
FREDERICK W. ULRICH, ESQ.
Asst. Federal Public Defender

*/s/ F. Clinton Broden*
F. CLINTON BRODEN, ESQ.
Broden & Mickelsen

*/s/ Nicholas D. Smith*
NICHOLAS D. SMITH, ESQ.
David B. Smith, PLLC

*/s/ Steven A. Metcalf*
STEVEN A. METCALF, II, ESQ.
Metcalf & Metcalf, P.C.

Date: September 14, 2022

# STATUTORY ADDENDUM

# TABLE OF CONTENTS

Act of March 4, 1909, ch. 321, § 135, 35 Stat. 1113 (1909)............. Add. 1

Act of January 13, 1940, ch. 1, § 135(a), 54 Stat. 13 (1940) ........... Add. 1

Act of June 25, 1048, ch. 645, § 1, 62 Stat. 1770 (1948) ................. Add. 2

Antitrust Civil Process Act of 1962, Pub. L. No. 87-664, 76 Stat. 551 (1962) ........................................................................................ Add. 3

## § 241 Attempting to influence witness, juror, or officer

Sec. 135.  Whoever corruptly, or by threats or force, or by any threatening letter or communication, shall endeavor to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or officer acting as such commissioner, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or officer acting as such commissioner, in the discharge of his duty, or who corruptly or by threats or force, or by any threatening letter or communication, shall influence, obstruct, or impede, or endeavor to influence, obstruct, or impede, the due administration of justice therein, shall be fined not more than one thousand dollars, or imprisoned not more than one year, or both.

Act of March 4, 1909, ch. 321, § 135, 35 Stat. 1113 (1909).

## § 241(a)  Witnesses before governmental agencies or Congressional committees. Influencing, etc.

Sec. 135.  (a) That whoever corruptly, or by threats or force, or by any threatening letter or communication, shall endeavor to influence, intimidate, or impede any witness in any proceeding pending before any department, independent establishment, board, commission, or other agency of the United States, or in connection with any inquiry or investigation being had by either House, or any committee of either House, or any joint committee of the Congress of the United

States, or who corruptly or by threats or force, or by any threatening letter or communication shall influence, obstruct, or impede, or endeavor to influence, obstruct, or impede the due and proper administration of the law under which such proceeding is being had before such department, independent establishment, board, commission, or other agency of the United States, or the due and proper exercise of the power of inquiry under which such inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress of the United States shall be fined not more than $1,000 or imprisoned not more than one year, or both.

Act of January 13, 1940, ch. 1, § 135(a), 54 Stat. 13 (1940).

### § 1505  Influencing or injuring witness before agencies and committees

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness in any proceeding pending before any department or agency of the United States, or in connection with any inquiry or investigation being had by either House, or any committee of either House, or any joint committee of the Congress; or

Whoever injures any party or witness in his person or property on account of his attending or having attended such proceeding, inquiry, or investigation, or on account of his testifying or having testified to any matter pending therein, or;

Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes, or endeavors to influence,

obstruct, or impede the due and proper administration of the law under which such proceeding is being had before such department or agency of the United States, or the due and proper exercise of the power of inquiry under which such inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress –

Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

Act of June 25, 1948, ch. 645, § 1, 62 Stat. 1770 (1948).

### § 1505 Obstruction of proceedings before departments, agencies, and committees.

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness in any proceeding pending before any department or agency of the United States, or in connection with any inquiry or investigation being had by either House, or any committee of either House, or any joint committee of the Congress; or

Whoever injures any party or witness in his person or property on account of his attending or having attended such proceeding, inquiry, or investigation, or on account of his testifying or having testified to any matter pending therein, or;

Whoever, with intent to avoid, evade, prevent, or obstruct compliance in whole or in part with any civil investigative demand duly and properly made under the Antitrust Civil Process Act willfully removes from any place, conceals, destroys, mutilates, alters, or by other means falsifies any

documentary material which is the subject of such demand; or

Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede the due and proper administration of the law under which such proceeding is being had before such department or agency of the United States, or the due and proper exercise of the power of inquiry under which such inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress –

Shall be fined not more than $5,000 or imprisoned not more than five years, or both."

Antitrust Civil Process Act of 1962, Pub. L. No. 87-664, 76 Stat. 551.