ORAL ARGUMENT NOT YET SCHEDULED

Nos. 22-3038, 22-3039 & 22-3041

# In the United States Court of Appeals for the District of Columbia Circuit

―――――――――

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*

v.

JOSEPH FISCHER, EDWARD LANG, AND GARRET MILLER,

*Defendants-Appellees*

―――――――――

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
D. CT. NOS. 1:21-CR-53, 1:21-CR-119, 1:21-CR-234 (NICHOLS, J.)

―――――――――

APPELLANT'S CORRECTED CONSOLIDATED REPLY BRIEF FOR THE UNITED STATES

―――――――――

MATTHEW M. GRAVES
    United States Attorney
    District of Columbia

JOHN CRABB JR.
    Chief, Capitol Siege Section
    District of Columbia

KENNETH A. POLITE
    Assistant Attorney General

LISA H. MILLER
    Deputy Assistant Attorney
    General

JAMES I. PEARCE
    Appellate Counsel
    Capitol Siege Section
    Criminal Division
    U.S. Department of Justice
    950 Pennsylvania Ave., N.W.
    Washington, DC 20530
    (202) 532-4991
    James.Pearce@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................ii

GLOSSARY OF ABBREVIATIONS.....................................................viii

INTRODUCTION AND SUMMARY OF ARGUMENT .........................1

ARGUMENT.......................................................................................2

    I.    Section 1512(c)(2) covers the defendants' alleged
        conduct. ...................................................................................2

        A.    Like the district court, the defendants offer an
               interpretation of Section 1512(c)(2) that is
               inconsistent with its text, context, structure, and
               history. ..........................................................................2

        B.    Interpreted correctly, Section 1512(c)(2)'s *mens
               rea* and nexus requirements limit the statute's
               reach..............................................................................23

        C.    Neither the rule of lenity nor ex post facto
               principles apply..........................................................28

        D.    The defendants' conduct would be covered under
               the district court's or their own interpretation of
               Section 1512(c)(2)......................................................30

    II.    Dismissal was improper even under the district
        court's or the defendants' narrowed interpretation of
        Section 1512(c)(2).................................................................31

CONCLUSION.................................................................................33

CERTIFICATE OF SERVICE .............................................................1

CERTIFICATE OF COMPLIANCE .....................................................2

# TABLE OF AUTHORITIES

## Cases

*Ali v. Fed. Bureau of Prisons,*
    552 U.S. 214 (2008) ................................................................ 8

*Arthur Andersen LLP v. United States,*
    544 U.S. 696 (2005) ..........................................................23, 24

*Begay v. United States,*
    553 U.S. 137 (2008) ...........................................................6, 7, 8

*Bouie v. City of Columbia,*
    378 U.S. 347 (1964) ............................................................. 29

*Cheek v. United States,*
    498 U.S. 192 (1991) ............................................................. 25

*Hamling v. United States,*
    418 U.S. 87 (1974) .............................................................. 31

*Hubbard v. United States,*
    514 U.S. 695 (1995) ............................................................. 15

*Johnson v. United States,*
    576 U.S. 591 (2015) ............................................................... 8

*Kincaid v. District of Columbia,*
    854 F.3d 721 (D.C. Cir. 2017) ............................................... 17

*Loughrin v. United States,*
    573 U.S. 351 (2014) ............................................................. 15

*Marinello v. United States,*
    138 S. Ct. 1101 (2018) ......................................................... 28

*Overdevest Nurseries, L.P. v. Walsh,*
    2 F.4th 977 (D.C. Cir. 2021) ................................................... 4

*Republic of Iraq v. Beaty*,
    556 U.S. 848 (2009) ........................................................... 15

*Russell Motor Car Co. v. United States*,
    261 U.S. 514 (1923) ............................................................. 5

*S. D. Warren Co. v. Maine Bd. of Env't Prot.*,
    547 U.S. 370 (2006) ............................................................. 5

*Shaw v. United States*,
    137 S. Ct. 462 (2016) ......................................................... 15

*United States v. Aguilar*,
    515 U.S. 593 (1995) .......................................................15, 27

*United States v. Ali*,
    885 F. Supp. 2d 17 (D.D.C. 2012), *reversed in part*,
    718 F.3d 929 (D.C. Cir. 2013) ........................................... 32

*United States v. Bingert*,
    No. 21-cr-91, --- F. Supp. 3d ---, 2022 WL 1659163 (D.D.C. May
    25, 2022) ........................................................................... 22

*United States v. Bronstein*,
    849 F.3d 1101 (D.C. Cir. 2017) ......................................... 27

*United States v. Burge*,
    711 F.3d 803 (7th Cir. 2013) ............................................6, 9

*United States v. Butler*,
    822 F.2d 1191 (D.C. Cir. 1987) ......................................... 32

*United States v. Caldwell*,
    581 F. Supp. 3d 1 (D.D.C. 2021) ...............................5, 28, 29

*United States v. Carpenter*,
    No. 09-cr-271, 2012 WL 292480 (W.D. La. Jan. 31,
    2012), *aff'd*, 500 F. App'x 331 (5th Cir. 2012) ................... 12

*United States v. Chaggar*,
   197 F. App'x 704 (9th Cir. 2006) ........................................................ 15

*United States v. De Bruhl-Daniels*,
   491 F. Supp. 3d 237 (S.D. Tex. 2020) ................................................... 5

*United States v. Dorri*,
   15 F.3d 888 (9th Cir. 1994) .............................................................. 26

*United States v. Ermoian*,
   752 F.3d 1165 (9th Cir. 2013) ........................................... 13, 19, 20, 21

*United States v. Fitzsimons*,
   No. 21-cr-158, --- F. Supp. 3d ---, 2022 WL 1698063 (D.D.C. May
   26, 2022) ........................................................................................ 23

*United States v. Floyd*,
   740 F.3d 22 (1st Cir. 2014) .............................................................. 25

*United States v. Gatling*,
   96 F.3d 1511 (D.C. Cir. 1996) .......................................................... 26

*United States v. Hillie,*
   227 F. Supp. 3d 57 (D.D.C. 2017) ..................................................... 31

*United States v. Jennings*,
   160 F.3d 1006 (4th Cir. 1998) .......................................................... 26

*United States v. Kelley*,
   36 F.3d 1118 (D.C. Cir. 1994) ............................................... 19, 21, 22

*United States v. Kelly*,
   147 F.3d 172 (2d Cir. 1998) ............................................................. 25

*United States v. Kernell*,
   667 F.3d 746 (6th Cir. 2012) ........................................................... 29

*United States v. Lanier*,
   520 U.S. 259 (1997) ........................................................................ 30

*United States v. McHugh*,
No. 21-cr-453, 2022 WL 1302880 (D.D.C. May 2, 2022) ...............6, 18

*United States v. Montgomery*,
578 F. Supp. 3d 54 (D.D.C. 2021) ...............................5, 7, 8, 16, 22, 26

*United States v. Mostofsky*,
579 F. Supp. 3d 9 (D.D.C. 2021) ......................................................... 6

*United States v. Moyer*,
674 F.3d 192 (3d Cir. 2012) ............................................................... 29

*United States v. North*,
910 F.2d 843 (D.C. Cir. 1990), *withdrawn and superseded in
part by United States v. North*, 920 F.2d 940 (D.C. Cir. 1990) ........ 24

*United States v. Oakar*,
111 F.3d 146 (D.C. Cir. 1997) ............................................................ 13

*United States v. Perez*,
575 F.3d 164 (2d Cir. 2009) ............................................................... 21

*United States v. Petruk*,
781 F.3d 438 (8th Cir. 2015) ............................................................... 9

*United States v. Poindexter*,
951 F.2d 369 (D.C. Cir. 1991) ............................................................ 17

*United States v. Popkin*,
943 F.2d 1535 (11th Cir. 1991) .......................................................... 25

*United States v. Ramos*,
537 F.3d 439 (5th Cir. 2008) ............................................................. 21

*United States v. Reeves*,
752 F.2d 995 (5th Cir. 1985) ............................................................. 25

*United States v. Reich*,
479 F.3d 179 (2d Cir. 2007) ................................................................ 9

*United States v. Sandlin,*
   575 F. Supp. 3d 16 (D.D.C. 2021)...........................................6, 16, 24

*United States v. Scott,*
   979 F.3d 986 (2d Cir. 2020)................................................. 29

*United States v. Suhl,*
   885 F.3d 1106 (8th Cir. 2018)............................................. 26

*United States v. Sutherland,*
   921 F.3d 421 (4th Cir. 2019) ............................................. 21

*United States v. Volpendesto,*
   746 F.3d 273 (7th Cir. 2014) ............................................. 9

*United States v. Williams,*
   553 U.S. 285 (2008) ...................................................... 16

*United States v. Williamson,*
   903 F.3d 124 (D.C. Cir. 2018)............................................ 31

*United States v. Winkelman,*
   101 F.3d 703 (Tbl.), 1996 WL 665379 (6th Cir. Nov. 15, 1996) ........ 12

*United States v. Yielding,*
   657 F.3d 688 (8th Cir. 2011) ............................................ 29

*Yates v. United States,*
   574 U.S. 528 (2015) ....................................................4, 12

**Statutes and Sentencing Guidelines**

18 U.S.C. § 6............................................................... 13

18 U.S.C. § 201............................................................ 26

18 U.S.C. § 666............................................................ 26

18 U.S.C. § 924............................................................. 6

18 U.S.C. § 1501.................................................................... 11

18 U.S.C. § 1502.................................................................... 12

18 U.S.C. § 1503.......................................................4, 11, 12, 22

18 U.S.C. § 1505...............................................4, 11, 12, 17, 22

18 U.S.C. § 1512.....................................3, 9, 10, 13, 17, 18

18 U.S.C. § 1515.......................................................13, 19, 20, 23

18 U.S.C. § 1516.................................................................... 12

18 U.S.C. § 1517.................................................................... 12

18 U.S.C. § 1518.................................................................... 12

18 U.S.C. § 1519.......................................................4, 12, 18, 28

26 U.S.C. § 7212.................................................................... 25

40 U.S.C. § 6134.................................................................... 27

U.S.S.G. § 4B1.2 (2014)........................................................ 7

## Other Authorities

Barr Memorandum (June 2018) ............................................ 11

Black's Law Dictionary (11th ed. 2019)...........................21, 30

Oxford English Dictionary .................................................... 20

S. Rep. No. 97-532 (1982)..................................................... 20

S. Rep. No. 107-146 (2002)................................................... 29

## GLOSSARY OF ABBREVIATIONS

App.          Appellant's Appendix

Br.           Appellees' Consolidated Answering Brief

Gov. Br.      Appellant's Consolidated Brief for the United States

## INTRODUCTION AND SUMMARY OF ARGUMENT

The defendants provide no viable defense of the district court's conclusion that a violation of 18 U.S.C. § 1512(c)(2) "requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding." App.117. They instead offer (Br.20) a different interpretation—that Section 1512(c)(2) covers only "acts . . . intended to affect the integrity or availability of evidence"—that is equally at odds with the statute's text, context, structure, and history. Rather than meaningfully dispute that Section 1512(c)(2)'s "corruptly" *mens rea* and the related nexus requirement limit the statute's reach, the defendants quibble with how to define corruptly and rely in part on a reading of Section 1512(c)(2) that the district court explicitly rejected. The defendants also do not contest that their conduct would be covered under the district court's interpretation. And even if the defendants' or the district court's construction of Section 1512(c)(2) were correct, the defendants fail to explain why dismissal is the appropriate remedy.

# ARGUMENT

## I.   Section 1512(c)(2) covers the defendants' alleged conduct.

Section 1512(c)(2)'s prohibition on conduct that "corruptly . . . obstructs, influences, or impedes any official proceeding" encompasses the defendants' efforts to derail the certification of the Electoral College vote on January 6, 2021.

### A.   Like the district court, the defendants offer an interpretation of Section 1512(c)(2) that is inconsistent with its text, context, structure, and history.

1.   The defendants contend (Br.18) that the district court "correctly construed" Section 1512(c)(2) when it limited the statute to document-focused conduct.  But instead of defending the district court's atextual "require[ment]" that a defendant "have taken some action with respect to a document, record, or other object," App.117, the defendants offer their own atextual interpretation (Br.20) that Section 1512(c)(2) "criminalizes acts" that "affect the integrity or availability of evidence," such as by "interfering with witness testimony."  The district court's narrow nexus-to-documents limitation would not cover interference with witness testimony or any of the myriad ways that individuals corruptly obstruct official proceedings, *see* App.103-04 & n.7 (district court criticizing as wrongly decided Section 1512(c)(2) cases that do not involve document

tampering), even though the defendants purport to explain cases involving such conduct (Br.25-26) as consistent with *their* view that Section 1512(c)(2) covers conduct involving "evidence impairment." Defending a limiting interpretation that the district court did not adopt, the defendants ignore that no published decision from any court has read into Section 1512(c)(2) the document-focused construction the district court in fact imposed. *See* Gov. Br.36-37 & n.4.

Just like the district court's take-some-action-with-respect-to-a-document interpretation, the defendants' evidence-impairment interpretation finds no support in Section 1512(c)'s text. Although the defendants claim to begin (Br.18) with statutory text, their analysis involves no textual discussion, instead jumping immediately (*id.* at 19) to interpretive canons such as *ejusdem generis* and *noscitur a sociis*. That leap fails to consider the ordinary meaning of Section 1512(c)(2)'s operative verbs ("obstructs, influences, or impedes"), the difference between those verbs and the evidence-spoliation verbs in Section 1512(c)(1) ("alters, destroys, mutilates, or conceals"), and how the subject-object relationship in Section 1512(c)(2), which emphasizes the blocking of a dynamic official proceeding, differs from the subject-object

relationship in Section 1512(c)(1), which emphasizes rendering unavailable a static record or document. Gov. Br.20-23. The defendants also ignore the judicial treatment of identical verbs in certain neighboring obstruction provisions, namely, 18 U.S.C. §§ 1503(a) and 1505. Gov. Br.23-24. Those textual and structural features demonstrate that Section 1512(c)(2) encompasses conduct that blocks or interferes with a congressional proceeding.[1]

The *ejusdem generis* and *noscitur a sociis* canons that the defendants invoke apply "when the term in question is directly preceded by a list of terms." *Overdevest Nurseries, L.P. v. Walsh*, 2 F.4th 977, 983 (D.C. Cir. 2021). But unlike the statute at issue (18 U.S.C. § 1519) in *Yates v. United States*, 574 U.S. 528 (2015), on which the defendants rely (Br.19), Section 1512(c) is not comprised of "a list of terms," "a general

---

[1] Neither the memorandum drafted by William Barr when he was a private citizen nor the internal Department of Justice memorandum drafted for the Attorney General to review the Special Counsel's Report (*see* Br.16-17) reflects positions taken by the United States. The defendants are incorrect to suggest that either memorandum states the government's view. In addition, neither memorandum addresses whether Section 1512(c)(2) covers the use of force or fraud to obstruct or impede an official proceeding, and neither considered whether electoral certificates, which were put at risk by the attack on the Capitol, were documentary evidence in the certification proceeding.

word or phrase that follows a list of specifics," *United States v. Caldwell*, 581 F. Supp. 3d 1, 29 (D.D.C. 2021), or "a string of statutory terms [that] raises the implication that the words grouped in a list should be given related meaning," *S. D. Warren Co. v. Maine Bd. of Env't Prot.,* 547 U.S. 370, 378 (2006) (internal quotation marks omitted).  Section 1512(c) instead includes two sub-provisions separated by the disjunctive "or"; each sub-provision contains verbs that "differ in material respects" and nouns that are "different in kind." *United States v. Montgomery*, 578 F. Supp. 3d 54, 75 (D.D.C. 2021).  Moreover, the *ejusdem* and *noscitur* canons come into play to construe terms that are "of obscure or doubtful meaning," *Russell Motor Car Co. v. United States,* 261 U.S. 514, 520 (1923), in order to "resolve ambiguity, not to create it," *Caldwell*, 581 F. Supp. 3d 29.  Those interpretive canons thus have no application here. *See Montgomery*, 578 F. Supp. 3d at 74-75 (analyzing *Yates* and declining to apply *ejusdem generis* and *noscitur a sociis* canons); *Caldwell*, 581 F. Supp. 3d at 29-30 (same); *see also United States v. De Bruhl-Daniels*, 491 F. Supp. 3d 237, 251 (S.D. Tex. 2020) (declining to apply the *noscitur a sociis* canon to interpret Section 1512(c)(2)).

Just as the district court did for its document-focused interpretation

of Section 1512(c)(2), *see* App.101-06, the defendants also draw support (Br.20-23) for their evidence-impairment interpretation from the discussion of "otherwise" in *Begay v. United States*, 553 U.S. 137 (2008). But "*Begay* cannot bear the weight" that the district court and the defendants "assign[] to it." *United States v. McHugh*, No. 21-cr-453, 2022 WL 1302880, at *5 (D.D.C. May 2, 2022). For one, the defendants provide no persuasive reason to displace the "more natural reading," *id.* at *5 n.9, of "otherwise" in favor of *Begay*'s context-dependent and nonintuitive interpretation. As used in Section 1512(c), "otherwise" implies that Section 1512(c)(2) encompasses obstructive conduct that targets an official proceeding "by means *other than* document destruction" covered in Section 1512(c)(1). *United States v. Mostofsky*, 579 F. Supp. 3d 9, 25 (D.D.C. 2021) (quoting *United States v. Sandlin*, 575 F. Supp. 3d 16, 25 (D.D.C. 2021)); *see United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013). That understanding takes account of the grammatical and structural differences between Section 1512(c) and the residual clause in the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii), at issue in *Begay*. Gov. Br.30-33.

The defendants also rely (Br.23) on cases that unsurprisingly

applied *Begay*'s construction of "otherwise" to the former definition of "crime of violence" in the United States Sentencing Guidelines, which mirrored the residual clause definition in the ACCA. *See* U.S.S.G. § 4B1.2(a)(2) (2014) (defining "crime of violence" as a felony that "is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise* involves conduct that presents a serious potential risk of physical injury to another") (emphasis added).   It does not follow that *Begay*'s analysis of "otherwise" should be applied to Section 1512(c), which, as already explained, does not resemble the ACCA's residual clause.

The defendants' contention (Br.24-25) that only a construction of "otherwise" that imports their evidence-impairment gloss on Section 1512(c)(2) "give[s] effect to every clause and word" (quoting *Begay*, 553 U.S. at 143) lacks merit.   Interpreted consistently with its ordinary meaning and in the context of Section 1512(c) as a whole, "otherwise" in Section 1512(c)(2) "signals a shift in emphasis . . . from actions directed at evidence to actions directed at the official proceeding itself," *Montgomery*, 578 F. Supp. 3d at 72 (internal quotation marks omitted). "Otherwise" thus indicates that Section 1512(c)(2) does not apply to the

document destruction and evidence tampering crimes prohibited in Section 1512(c)(1). This Court should not "woodenly apply limiting principles" simply because Congress included a "specific" crime "along with" a more "general" prohibition. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 227 (2008).[2] "Had Congress intended to limit" Section 1512(c)(2) as the defendants contend, "it could easily have written," *id.*, a prohibition that covers anyone who "'engages in conduct that otherwise impairs the integrity or availability of evidence or testimony for use in an official proceeding,'" *Montgomery*, 578 F. Supp. 3d at 73.

The differing "limiting principles" that the district court and the defendants offer, purportedly grounded in the term "otherwise," exemplify the flaw in both. Just as *Begay*'s engrafting of a requirement of "purposeful, 'violent,' and 'aggressive'" conduct, 553 U.S. at 144-45, failed to "bring[] clarity" to the residual clause, *Johnson v. United States*, 576 U.S. 591, 600 (2015), the defendants' and the district court's dueling

---

[2] The defendants' suggestion (Br.24) that *Ali* supports their limiting construction is mistaken, as the Supreme Court there declined to adopt the offered limiting construction because the statute was "most consistent and coherent when . . . read to mean what it literally says." 552 U.S. at 227-28. The same is true of Section 1512(c)(2).

constructions fail to "clarify" the already pellucid statutory language in Section 1512(c)(2).  As noted above, cases that validly state violations of Section 1512(c)(2) under the defendants' evidence-impairment interpretation (Br.25-26) such as *United States v. Petruk*, 781 F.3d 438 (8th Cir. 2015), *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014), and *Burge*, *supra*, do not pass muster under the district court's document-focused construction, *see* App.103-04 & n.7 (criticizing *Petruk*, *Volpendesto*, and *Burge*).[3]  By contrast, interpreting the statute consistently with its plain language and structure as a prohibition on obstructive conduct *other than* document destruction avoids the ambiguity that results from treating "otherwise" as a Rorschach test for conflicting atextual limiting constructions.

The defendants claim (Br.27) that a plain-language interpretation of Section 1512(c)(2) would overlap with 18 U.S.C. § 1512(d), which carries a three-year maximum sentence and prohibits "intentionally

---

[3] The defendants' related claim (Br.25) that Section 1512(c)(2) cases uniformly involve impairing *evidence submitted to an official proceeding* is incorrect.  *See United States v. Reich*, 479 F.3d 179, 185-87 (2d Cir. 2007) (affirming conviction where defendant sent opposing party a forged court order, which in turn caused that party to withdraw a court filing).

harass[ing] another person" and thereby hindering, delaying, or preventing any person from "attending or testifying in an official proceeding." Any overlap is no reason to limit Section 1512(c)(2)'s plain meaning. *See infra* 15-16. In any event, Section 1512(d)(1) does not fully capture the conduct at issue in these cases (or in many of the cases stemming from the events at the Capitol on January 6, 2021), which involved more than "harass[ment]." Additionally, Section 1512(d)(1) focuses only on indirect obstruction ("intentionally harass[ing] another person" which "thereby hinders, delays, prevents, or dissuades"); it does not cover a defendant's own direct efforts to stop the proceeding itself. Moreover, the availability of Section 1512(d)(1) does not illustrate that the defendants offer a sensible interpretation of Section 1512(c)(2).

2.  The defendants overstate the contextual support for their interpretation of Section 1512(c)(2). None of the interpretive canons they invoke—elephant-in-a-mousehole, surplusage, and absurdity—supports their evidence-impairment interpretation.

First, they repeat (Br.30) the district court's description (App.110) of Section 1512(c)(2) as potentially hiding an elephant in a mousehole if the statute is interpreted as a catchall provision. In enacting a direct

obstruction provision in Section 1512(c) provision, however, Congress was not merely plugging a mousehole, as evidenced by the provision's placement in Section 1512. *See* Gov. Br.39 n.6; 44-45.   Furthermore, Congress made Section 1512(c)(2) the final substantive obstruction prohibition in Section 1512 that carried a 20-year sentence, thereby emphasizing its role as a catchall for the more serious obstructive offenses that precedes it, *see* Gov. Br.37-39, and distinguishing it from the less serious harassment offense in Section 1512(d) that follows it. Moreover, the elephant-in-a-mousehole canon does not apply where, as here, the relevant statutory terms are not "vague" or found in "ancillary provisions." Gov. Br.39 (internal quotation marks omitted).

Second, the defendants' claim (Br.30-32) that the government's interpretation of Section 1512(c)(2) renders superfluous Section 1503, Section 1505, and the rest of Section 1512 is mistaken.[4] As an initial

---

[4] The related claim made in the June 2018 memorandum from Bill Barr that such an interpretation would "subsume virtually all other obstruction provisions in Title 18" is inaccurate. *See* Barr memorandum at 5, available at https://www.documentcloud.org/documents/5638848-June-2018-Barr-Memo-to-DOJ-Muellers.     Section     1512(c)(2)'s requirement that a defendant engage in obstructive conduct directed at an "official proceeding" places numerous Chapter 73 provisions outside its scope.   The first two provisions in Chapter 73, for example, which prohibit "[a]ssault on a process server," 18 U.S.C. § 1501, and

matter, the defendants' and the district court's reliance on the surplusage

canon fails because their interpretations would also result in surplusage.

*See* Gov.Br.39-42.   Even where Section 1512(c)(2) overlaps with other

prohibitions, it does not render them superfluous.   Section 1503, for

example, covers various forms of obstruction that interfere with the "due

administration of justice," whether or not the obstruction is directed at

an official proceeding, as required under Section 1512(c)(2).   Similarly,

Section 1505 prohibits the corrupt obstruction of "the due and proper

exercise of the power of inquiry under which any inquiry or investigation

is being had by either House, or any committee of either House or any

joint committee of the Congress."  18 U.S.C. § 1505.  But not all inquiries

---

"[r]esistance to [an] extradition agent," 18 U.S.C. § 1502, involve no nexus to an official proceeding. *See, e.g.*, *United States v. Carpenter*, No. 09-cr-271, 2012 WL 292480, at *3-*4 (W.D. La. Jan. 31, 2012), *aff'd*, 500 F. App'x 331 (5th Cir. 2012) (local police chief convicted under Section 1501 for interfering with execution of arrest warrants by U.S. Marshals); *United States v. Winkelman*, 101 F.3d 703 (Tbl.), 1996 WL 665379, at *1-*2 (6th Cir. Nov. 15, 1996) (defendant convicted under Section 1502 for false statements related to an airport drug interdiction).  The same is true for the "specialized provisions" at the end of Chapter 73 that "prohibit[] obstructive acts in specific contexts." *Yates*, 574 U.S. at 540 (discussing 18 U.S.C. § 1516 (audits of recipients of federal funds); 18 U.S.C. § 1517 (federal examinations of financial institutions); 18 U.S.C. § 1518 (criminal investigations of federal health care offenses)); *see also* 18 U.S.C. § 1519 (destroying records in federal investigations).

and investigations have sufficient formality to constitute an official proceeding. *See United States v. Ermoian*, 752 F.3d 1165, 1171-72 (9th Cir. 2013). For example, although obstructing an investigation by the House Ethics Committee would clearly fall within Section 1505, it likely falls outside Section 1512(c)(2).[5] And not all official proceedings necessarily involve an inquiry or investigation.

Section 1512(c)(2) also does not swallow the other provisions of Section 1512 itself. For example, Sections 1512(a) and 1512(b) criminalize killing, using or threatening physical force, or using intimidation, threats, or corrupt persuasion with the intent to "prevent" or "hinder, delay, or prevent" the communication of certain information to law enforcement. *See* 18 U.S.C. §§ 1512(a)(1)(C), 1512(a)(2)(C), 1512(b)(3). Because those provisions are not connected to an official proceeding, they are not subsumed within Section 1512(c)(2). Similarly, although Section 1512(c)(2) would cover much of the conduct also covered

---

[5] The only "official proceeding" definition in Section 1515(a)(1) that might potentially apply is a "proceeding before a Federal Government agency which is authorized by law." 18 U.S.C. § 1515(a)(1)(C). But the House Ethics Committee "would not naturally be described by any of the terms enumerated in the definition of 'agency' in [18 U.S.C.] § 6." *United States v. Oakar*, 111 F.3d 146, 154 (D.C. Cir. 1997).

by Sections 1512(b)(1) and (2)—which apply where a defendant "knowingly uses intimidation, threatens, or corruptly persuades another person" intending either to (1) "influence, delay, or prevent" another's testimony at an official proceeding, or (2) "cause or induce" a person to take certain actions with respect to an official proceeding—it does not render them superfluous. The knowing threats and intimidation that those provisions prohibit may be corrupt, and thus fall within Section 1512(c)(2). But they need not be. A defendant might knowingly threaten or intimidate someone into avoiding participation in a proceeding for reasons unrelated to the outcome of the proceeding. An employer, for example, who threatens or intimidates his employee into working when the employee should be testifying pursuant to a grand jury subpoena has not acted "corruptly" within the meaning of Section 1512(c)(2) if the employer has no knowledge of or connection to the subject or targets of the investigation. Finally, to the extent Section 1512(d)(1)[6] reaches conduct also criminalized by Section 1512(c)(2), it is akin to a lesser-included offense of Section 1512(c)(2). *See United States v. Chaggar*, 197

---

[6] Sections 1512(d)(2)-(4) fall outside Section 1512(c)(2) because they proscribe conduct unrelated to an official proceeding.

F. App'x 704, 707 (9th Cir. 2006) (unpublished) (Section 1512(d)(1) is a lesser-included offense of Section 1512(b)).

The overlap between the scope of Section 1512(c)(2) and the scope of other obstruction prohibitions is not a reason to give its plain text an artificially limited construction. *See Shaw v. United States*, 137 S. Ct. 462, 469 (2016). The presence of even "substantial" overlap in criminal statutes is not "uncommon." *See Loughrin v. United States,* 573 U.S. 351, 358 n.4 (2014); *Hubbard v. United States,* 514 U.S. 695, 714 n.14 (1995) (opinion of Stevens, J.) ("Congress may, and often does, enact separate criminal statutes that may, in practice, cover some of the same conduct."); *United States v. Aguilar*, 515 U.S. 593, 616 (1995) (Scalia, J., concurring in part and dissenting in part) ("The fact that there is now some overlap between § 1503 and § 1512 is no more intolerable than the fact that there is some overlap between the omnibus clause of § 1503 and the other provisions of § 1503 itself."). That overlap is all the more unremarkable where, as here, Congress has enacted a catchall provision like Section 1512(c)(2), to fill gaps and capture "known unknowns." *Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009); *see* Gov. Br.39-40. It would have been impossible for Congress to write such a backstop

provision in a way that captured conduct similar in result to existing prohibitions, but not specifically anticipated by them, without overlap. Treating the existence of such overlap as a reason for limiting the backstop provision's scope would thus defeat, not effectuate, its design. *See Sandlin*, 575 F. Supp. 3d at 27-28.

Third, the defendants assert (Br.47-49) that absurd results would follow from interpreting Section 1512(c)(2) consistently with its plain language. But proposing a "fanciful hypothetical[]," *United States v. Williams*, 553 U.S. 285, 301 (2008), about a firearms lobbyist who identifies his work as "evil"—which fails to show that he is acting with corrupt purpose or through corrupt means, *see* Gov. Br.51—does not render "the line between lawful and criminal obstruction or influence of a congressional proceeding," *Montgomery*, 578 F. Supp. 3d at 82, absurd. In the guise of an absurdity claim, the defendants in fact contend (Br.48) that Section 1512(c)(2) is "unconstitutional[ly] vague[]." But any "[c]lose cases" that "can be imagined" under that statute are properly addressed "not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *Williams*, 553 U.S. at 306. A statute is not unconstitutionally vague (or likely to lead to absurd results) simply

16

because another statute may cover a given individual's conduct. *See Kincaid v. District of Columbia*, 854 F.3d 721, 729 (D.C. Cir. 2017). Comparisons with other Capitol siege cases are particularly inapt because the full extent of the evidence in those cases is neither before this Court nor known to the defendants or the public at large.

3.    Although consideration of the relevant legislative history is unnecessary given Section 1512(c)(2)'s clear statutory text, *see* Gov. Br.44, the defendants are incorrect to conclude (Br.36-43) that that history favors their (or the district court's) interpretation of Section 1512(c)(2). Tracing the history of obstruction statutes as set out in this Court's decision in *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), the defendants observe (Br.38) that Congress enacted Section 1512 in 1982 to focus principally on witness tampering, while retaining broader language—that criminalized "influencing, obstructing, or impeding" the proceeding in question—in Section 1505. *See Poindexter*, 951 F.2d at 380. Yet the defendants resist the conclusion that when Congress used the exact same verbs in 2002—"obstruct[], influence[], or impede[]"—in Section 1512(c)(2), it intended those verbs to carry the same meaning and scope that they had in the predecessor statute and in

17

Section 1505. *See McHugh*, 2022 WL 1302880, at *10. Nor do Section 1512's witness-tampering origins account for Section 1512(c)(1), which Congress also added in 2002 in the Sarbanes-Oxley Act.

The defendants further emphasize (Br.40-43) that the Sarbanes-Oxley Act's focus on document shredding makes it unlikely that Section 1512(c)(2) has a broader scope. Although that history accounts for Section 1512(c)(1) and Section 1519, both of which cover evidence tampering, it fails to explain why Congress enacted a separate provision that covered obstructive conduct carried out in ways other than through the document-focused acts criminalized in Section 1512(c)(1). By contrast, understanding Section 1512(c) as principally focused on criminalizing directly obstructive conduct, where Section 1512(c)(1) encompasses an individual's evidence-tampering crimes and Section 1512(c)(2) covers an individual's other obstructive acts that derail an official proceeding, finds support in the legislative history and gives each provision independent meaning. *See* Gov. Br.44-47.

Finally, the defendants argue (Br.40) that the legislative history does not support reading the phrase "official proceeding" in Section 1512 to include any proceeding unless it involves "investigations and

evidence." But, since it was enacted in 1982, the statutory definitions of an "official proceeding" for purposes of Section 1512 have included a "proceeding before the Congress." 18 U.S.C. § 1515(a)(1)(B). The defendants point to nothing in the legislative history to support their crabbed reading of that definition.

4. Relatedly, in invoking "decisional authority" (Br.43-47) in support of their evidence-impairment interpretation, the defendants argue that the term "official proceeding" in Section 1512(c)(2) must be limited to investigations and evidence. Every judge to have considered that argument in a Capitol siege case, including the district court here, *see* App.98-99, has rejected it. And neither of the two cases on which the defendants rely, *United States v. Kelley*, 36 F.3d 1118 (D.C. Cir. 1994), and *Ermoian*, *supra*, addresses a congressional proceeding.

Understanding what qualifies as an official proceeding "depends heavily on the meaning of the word 'proceeding'" because "'official proceeding'" is defined "somewhat circularly" as, among other things, a congressional "proceeding." *See Ermoian*, 752 F.3d at 1169. The certification of the Electoral College vote constitutes a "proceeding" under any interpretation of that term. In its broadest and most "general sense,"

a proceeding refers to "'[t]he carrying on of an action or series of actions; action, course of action; conduct, behavior.'" *Id.* (quoting *Proceeding,* Oxford English Dictionary, *available at* http://www.oed.com). The defendants do not meaningfully contend that the certification of the Electoral College vote, which involves a detailed "series of actions" outlining how the vote is opened, counted, potentially objected to, and ultimately certified, is not a proceeding—and indeed an official proceeding—under that definition. And there is good reason to construe "proceeding" as used in 18 U.S.C. § 1515 broadly. Section 1515's text encompasses not only congressional proceedings, but judicial proceedings, grand jury proceedings, any legally authorized proceedings before federal government agencies, and proceedings "involving the business of insurance." 18 U.S.C. § 1515(a)(1); *see* S. Rep. No. 97-532, at 17 (1982) (noting that the "term 'official proceeding'" in the obstruction statute is "defined broadly").

But even if the "legal—rather than the lay—understanding" of proceeding governs Section 1515's interpretation, *see Ermoian*, 752 F.3d at 1170, the Electoral College vote certification qualifies. This narrower definition includes the "business conducted by a court or other official

body; a hearing." Black's Law Dictionary, "proceeding" (11th ed. 2019). Taken with its modifier "official," the term proceeding thus "connotes some type of formal hearing." *Ermoian*, 752 F.3d at 1170; *see United States v. Ramos*, 537 F.3d 439, 462 (5th Cir. 2008) (the "more formal sense" of "official proceeding" is "correct in the context of § 1512"). For example, in cases assessing whether a law enforcement investigation amounts to an "official proceeding" as defined in Section 1515, courts analyze the degree of formality involved in an investigation. *See, e.g.*, *United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019) (FBI investigation not an "official proceeding" because that term "implies something more formal than a mere investigation"); *Ermoian*, 752 F.3d at 1170-72 (same); *United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009) (internal Bureau of Prisons investigation conducted by a review panel was an "official proceeding" because the review panel's "work [was] sufficiently formal"); *Ramos*, 537 F.3d at 463 (Customs and Border Patrol investigation not an "official proceeding" because that term "contemplates a formal environment"); *see also Kelley*, 36 F.3d at 1127 (a "formal investigation" conducted by the Officer of the Inspector General at the United States Agency for International Development (USAID)

qualified as a "proceeding" for purposes of 18 U.S.C. § 1505). Consistent with that reasoning, every district court judge in a Capitol siege case, including the court below (App.99-99), has concluded that the Electoral College vote certification qualifies as an "official proceeding." *See United States v. Bingert*, No. 21-cr-91, --- F. Supp. 3d ---, 2022 WL 1659163, at *4 (D.D.C. May 25, 2022).

Nothing in *Kelley* or *Ermoian* counsels a different result or otherwise supports the defendants' proposed interpretation of Section 1512(c)(2)'s scope. In determining whether a USAID investigation qualified as an official proceeding for purposes of Section 1505, this Court did not assess whether "proceeding" in Section 1505 differed from "official proceeding" in Section 1512 because the parties had stipulated that the two statutes were parallel for purposes of that case. *See Kelley*, 36 F.3d at 1128. Accepting that stipulation neither "constitute[d] a holding" nor "illuminate[d]" whether the Electoral College certification qualified as an official proceeding.[7] *Montgomery*, 578 F. Supp. 3d at 68. And as noted

---

[7] The defendants also rely (Br. 44 n.10) on a parallel drawn between Sections 1512 and 1503 and 1505 in the Department of Justice Criminal Resource Manual, but that section of the Manual was last published in 1997, predating Section 1512(c)(2), and thus "sheds no light" on the term

above, *Ermoian* addressed the entirely distinct question of whether an FBI investigation qualified as an official proceeding under another definition in Section 1515.  In short, no "decisional authority" supports the defendants' view that a proceeding before the Congress excludes the Electoral College certification, or that this Court should interpret the phrase "official proceeding" in Section 1512(c)(2) to limit the scope of the conduct that the statute reaches.

### B.   Interpreted correctly, Section 1512(c)(2)'s *mens rea* and nexus requirements limit the statute's reach.

Rather than meaningfully dispute that the *mens rea* and nexus requirements in Section 1512(c)(2) limit the statute's reach, the defendants instead (Br.32-36) inaccurately describe the operative *mens rea* standard, incorrectly claim that a district court has adopted that standard, and shunt aside as irrelevant the nexus requirement. Interpreted correctly, the *mens rea* and nexus requirements in Section 1512(c)(2) ensure that the provision does not encompass conduct that is "not inherently malign."  *Arthur Andersen LLP v. United States*, 544 U.S. 696, 704 (2005).

---

here. *United States v. Fitzsimons*, No. 21-cr-158, --- F. Supp. 3d ---, 2022 WL 1698063, at *5 (D.D.C. May 26, 2022).

To prove that a defendant acted corruptly for purposes of Section 1512(c)(2), the government must establish that the defendant acted either "with a corrupt purpose" or through "independently corrupt means," or both, *see Sandlin*, 575 F. Supp. 3d at 31 (quoting *United States v. North*, 910 F.2d 843, 942-43 (D.C. Cir. 1990) (Silberman, J., concurring in part and dissenting in part), *withdrawn and superseded in part by United States v. North*, 920 F.2d 940 (D.C. Cir. 1990) (per curiam). The government must also prove that the defendant acted "with consciousness of wrongdoing," namely with "an understanding or awareness that what the person is doing is wrong." *See United States v. Reffitt*, No. 21-cr-32, ECF No. 119 at 26 (D.D.C. Mar. 7, 2022); *see Arthur Andersen*, 544 U.S. at 706 (faulting jury instructions in Section 1512 case for "fail[ing] to convey the requisite consciousness of wrongdoing"). As applied here, the government would likely argue that the defendants used independently corrupt means by assaulting or interfering with law enforcement officers and evinced a corrupt purpose when expressing the goal of taking Congress "to the gallows" or trying to stop the certification through engaging in "war." *See* Gov. Br. 9-10.

The unlawful-benefit standard that the defendants propose (Br.35) is not required under Section 1512(c). In the defendants' view, "corruptly" in Section 1512(c)(2) "requires proof that the defendant acted with the intent to obtain an unlawful benefit for himself or an associate." Br.35. But that standard is most frequently used in certain fraud and tax offenses. For example, courts have adopted that interpretation when interpreting "corruptly" as used in 26 U.S.C. § 7212(a), which prohibits "corruptly . . . imped[ing]" federal tax law. *See United States v. Floyd*, 740 F.3d 22, 31 (1st Cir. 2014) (noting a "consensus among the courts of appeals that 'corruptly'" in Section 7212(a) "means acting with an intent to procure an unlawful benefit either for the actor or for some other person," and citing cases); *see also United States v. Kelly*, 147 F.3d 172, 176 (2d Cir. 1998) (adopting that interpretation of "corruptly" in Section 7212(a)); *United States v. Popkin*, 943 F.2d 1535, 1540 (11th Cir. 1991) (same); *United States v. Reeves*, 752 F.2d 995, 1001 (5th Cir. 1985) (same). The federal courts' uniform adoption of a more specific and rigorous definition of "corruptly" in Section 7212(a) accords with other *mens rea* requirements in the criminal tax context. *See Cheek v. United States*, 498 U.S. 192, 199-201 (1991) (holding that the term "willfully"

requires proof "that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty," because "the complexity of the tax laws" may make it "difficult for the average citizen to know and comprehend the extent of the[ir] duties and obligations" under those laws).[8]  But no court interpreting Section 1512(c) appears to have interpreted "corruptly" in that manner,[9] and "corruptly" as interpreted above sufficiently restrains Section 1512(c)(2)'s scope.

---

[8] The term "corruptly" as used in the obstruction-of-justice statutes also differs from the use of that term in bribery statutes such as 18 U.S.C. § 201 and 18 U.S.C. § 666.  "Given the equation of bribery with a *quid pro quo,* 'corruptly' in the context of the bribery statute would appear to mean that the defendant accepts money with the specific intent of performing an official act in return."  *United States v. Gatling*, 96 F.3d 1511, 1522 (D.C. Cir. 1996) (conspiracy to violate Section 201); *see United States v. Suhl*, 885 F.3d 1106, 1114 n.5 (8th Cir. 2018) (upholding jury instruction in Section 666 case that defined "corruptly" as acting "with the intent that something of value be given or offered to influence an agent of the state in connection with the agent's official duties" (quoting *United States v. Jennings*, 160 F.3d 1006, 1019 (4th Cir. 1998))).  Some courts have applied the unlawful-benefit interpretation to "corruptly" in bribery cases.  *See United States v. Dorri*, 15 F.3d 888, 890 (9th Cir. 1994).

[9] The defendants' claim (Br.35) that Judge Moss adopted the unlawful-benefit interpretation of "corruptly" in *Montgomery* is incorrect.  He rejected the defendants' argument there while "leav[ing] for another day" how to define corruptly.  *See* 578 F. Supp. 3d at 84 n.5.

The nexus requirement, which involves proving that the defendant's conduct had the "natural and probable effect of interfering with" an official proceeding, that the defendant acted "in a manner that is likely to obstruct," and that the defendant "kn[e]w that his actions [were] likely to affect" a particular proceeding, *Aguilar*, 515 U.S. at 599, 601 (internal quotation marks omitted), plays a similar restraining role. *See* Gov. Br. 51-54. Along with the "corruptly" *mens rea*, those limitations distinguish individuals (like the defendants) who seek to halt or block a proceeding from those who demonstrate in the Capitol building or briefly interrupt government business. *Cf. United States v. Bronstein*, 849 F.3d 1101, 1105 (D.C. Cir. 2017) (defendants who submitted to security screening, entered a government building to make brief speeches or sing in a "spectacle" that "'lasted approximately two to four minutes'" prosecuted for "'mak[ing] a harangue or oration'" in the Supreme Court in violation of 40 U.S.C. § 6134 but not under Section 1512(c)(2)). Rather than contest that proposition, the defendants seek to minimize (Br. 36) the nexus requirement's limiting function. The conduct criminalized under a plain-language interpretation of Section 1512(c)(2) is broader than that under Section 1512(c)(1), but the *mens rea* and nexus

requirements avoid the "vagueness," "overbreadth," and "uncertainty" that the defendants invoke. *See Marinello v. United States*, 138 S. Ct. 1101, 1106 (2018).

### C.    Neither the rule of lenity nor ex post facto principles apply.

Because text, structure, history, and other tools of statutory interpretation unambiguously demonstrate that Section 1512(c)(2) prohibits any conduct that obstructs or impedes an official proceeding, and the *mens rea* and nexus requirements ensure that the provision does not ensnare innocent conduct, the rule of lenity does not apply. *See* Gov. Br. 54-58. The defendants suggest (Br. 29) that applying the rule of lenity here draws support from *Yates*, but Section 1512(c)(2) differs significantly from Section 1519. *See Caldwell*, 581 F. Supp. 3d at 25-30 (distinguishing *Yates*). Moreover, neither of the features that constrain Section 1512(c)(2)'s reach—the "corruptly" *mens rea* and the nexus requirement—is present in Section 1519. Section 1519 requires that the defendant act "knowingly" and "with the intent to impede, obstruct, or influence," 18 U.S.C. § 1519, but does not impose the more stringent "corruptly" *mens rea*. And courts of appeals have uniformly concluded that Section 1519 does not include a "nexus" requirement. *See United*

*States v. Scott*, 979 F.3d 986, 992 (2d Cir. 2020) (Supreme Court's decisions in *Marinello*, *Arthur Andersen*, and *Aguilar* do not "overrule[]" existing circuit precedent that Section 1519 "does not have a nexus requirement"); *United States v. Moyer*, 674 F.3d 192, 209 (3d Cir. 2012) (declining to apply nexus requirement to Section 1519); *United States v. Kernell*, 667 F.3d 746, 753-55 (6th Cir. 2012); *United States v. Yielding*, 657 F.3d 688, 712-14 (8th Cir. 2011); *see also* S. Rep. No. 107-146, at 14-15 (2002) ("[Section 1519] is specifically meant not to include any technical requirement, which some courts have read into other obstruction of justice statutes, to tie the obstructive conduct to a pending or imminent proceeding or matter.").

Equally unavailing is the defendants' brief invocation (Br.29) of the "ex post facto" or the novel-construction principle. That principle applies only where the judicial "construction unexpectedly broadens a statute which on its face had been definite and precise." *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964). No court has suggested, let alone held, that Section 1512(c)(2) "extends no further than the impairment of or interference with evidence presentation," *Caldwell*, 581 F. Supp. 3d at

33, and no "fundamentally similar" prosecution must exist to provide fair notice, *United States v. Lanier*, 520 U.S. 259, 270-71 (1997).

### D.    The defendants' conduct would be covered under the district court's or their own interpretation of Section 1512(c)(2).

Nowhere do the defendants dispute that their conduct would be covered under the district court's interpretation that Section 1512(c)(2) requires that a defendant take some action with respect to a document. *See* Gov. Br.59-61.  Their sole related argument is the claim (Br.51 n.13) that electoral vote certificates cannot constitute "evidence" because they are used for casting votes but are "not created or employed to 'prove or disprove' an 'alleged fact.'" (citing Black's Law Dictionary).  Under that mistaken view, the certificates would not qualify as evidence even if individuals were prosecuted under Section 1512(c)(1) for altering, destroying, or mutilating a certificate.  Because the defendants sought to prevent lawmakers from reviewing electoral certificates, which included forcing congressional staff to remove ballot boxes from the House and Senate chambers to "maintain custody of the ballots," Gov. Br.60-61, their conduct would state an offense under an interpretation of Section 1512(c)(2) that covers only acts "intended to affect the integrity or availability of evidence."  Br.20.

## II.   Dismissal was improper even under the district court's or the defendants' narrowed interpretation of Section 1512(c)(2).

The indictments in these cases echoed Section 1512(c)(2) "operative statutory text" by charging that each defendant had corruptly obstructed the certification of the Electoral College vote on January 6, 2021.  *See United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018).  The indictments thus "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished."  *Hamling v. United States*, 418 U.S. 87, 117 (1974) (internal quotation marks omitted).  Unlike in *United States v. Hillie,* 227 F. Supp. 3d 57 (D.D.C. 2017), where the defendant was merely alleged have done "something involving visual depictions of sexually explicit conduct of a minor . . . during periods of time that span two to three years," *id.* at 72, the defendants here do not dispute that the indictments charged them for violations of Section 1512(c)(2) and other offenses in connection with their actions directed at the certification proceeding on January 6.  To the extent the defendants are concerned (Br.50) that the specific conduct for which the grand jury charged them amounted to "loudly pogo sticking outside the Capitol" or "lobbying for any 'wrongful purpose'" instead of assaulting officers and crashing

against police lines in an effort to obstruct the certification proceeding, a bill of particulars is the mechanism that ensures the offenses are "stated with enough precision to allow [them] to understand the charges." *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987). Rather than dismissing the Section 1512(c)(2) counts in these cases, the district court should have permitted the cases to proceed to trial, where the court could—but, for the reasons given above, should not—enforce its (or the defendants') narrowed interpretation of Section 1512(c)(2). *See United States v. Ali*, 885 F. Supp. 2d 17, 32 (D.D.C. 2012), *reversed in part*, 718 F.3d 929 (D.C. Cir. 2013).

## CONCLUSION

For the foregoing reasons, the Court should reverse the dismissal orders and remand the cases for further proceedings.

Respectfully submitted,

MATTHEW M. GRAVES
  United States Attorney
  District of Columbia

KENNETH A. POLITE
  Assistant Attorney General
  Criminal Division

JOHN CRABB JR.
  Chief, Capitol Siege Section
  District of Columbia

LISA H. MILLER
  Deputy Assistant Attorney
   General

/S/ JAMES I. PEARCE
  Appellate Counsel
  Capitol Siege Section
  Criminal Division
  U.S. Department of Justice
  950 Pennsylvania Ave., N.W.
  Suite 1243
  Washington, DC 20530
  (202) 532-4991
  James.Pearce@usdoj.gov

October 5, 2022

## CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25(d), the undersigned counsel of record certifies that the foregoing Reply Brief for the United States was this day served upon counsel for appellees, by notice of electronic filing with the District of Columbia Circuit CM/ECF system.

DATED: OCTOBER 5, 2022

s/ James I. Pearce
JAMES I. PEARCE
Appellate Counsel, Capitol Siege Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W. Suite 1243
Washington, DC 20530
(202) 532-4991
James.Pearce@usdoj.gov

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 6,485 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in Century 14-point font in text and Century 14-point font in footnotes.

3. This brief complies with the privacy redaction requirement of Fed R. App. 25(a)(5) because it contains no personal data identifiers.

4. The digital version electronically filed with the Court on this day is an exact copy of the written document to be sent to the Clerk; and

5. This brief has been scanned for viruses with the most recent version of McAfee Endpoint Security, version 10.7, which is continuously updated, and according to that program is free of viruses.

DATED: OCTOBER 5, 2022

s/ James I. Pearce
JAMES I. PEARCE
    Appellate Counsel, Capitol
    Siege Section
    U.S. Department of Justice