IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | Case No. 1:22-cr-0080-CRC |
| | : | |
| **JOSHUA JOHNSON,** | : | |
|     **Defendant.** | : | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

COMES NOW ATTORNEY, Allen H. Orenberg, to respectfully submit this Memorandum in Aid of Sentencing on behalf of Defendant Joshua Johnson. There can be no dispute that the Court has a duty to deliver a sentence that is not greater than necessary to comply with sentencing purposes. *See* 18 U.S.C. §3553(a).

When fashioning an appropriate sentence, Mr. Johnson requests the Court to impose a variant sentence which properly reflects a (final) determination of the Advisory Sentencing Guidelines, as well as the other 18 U.S.C. §3553(a) factors, and recognizing, (1) that he voluntarily pled guilty rather than going to trial, and (2) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Furthermore, the Court should take into consideration a variance downward of at least three levels from the final USSG base offense level is warranted based the extraordinary detrimental impact of the COVID-19 pandemic on incarcerated individuals at the Federal Bureau of Prisons.

Respectfully, Mr. Johnson asks the Court to impose a sentence of, essentially, 9 to 12 months (and one day of imprisonment), followed by 2 years of supervised release, 100 hours of community service, and appropriate restitution and a special assessment.

The Pre-Sentence Report (PSR) concludes a Total Offense Level of 14, and six criminal history points resulting in a criminal history category of III. The advisory range of imprisonment is 21-27 months, with a term of supervised release of 1 to 3 years. *See* PSR [46] ¶¶ 80, 86. However, as noted herein, Mr. Johnson objects to the assignment of 6 criminal history points and, moreover, asserts his criminal history category (III) substantially over-represents the seriousness of his actual criminal history.

It is counsel's understanding that Mr. Johnson is in compliance with all of his conditions of release. Furthermore, while on release he has appeared, on time, for every court hearing whether by VTC or in-person.

A sentencing hearing is scheduled for July 6, 2023, at 10:00 a.m.

I.     **The Final Pre-Sentence Investigation Report**

Counsel, on behalf of Mr. Johnson, has previously noted objections to the PSR conclusion regarding the assignment of 6 criminal history points, with a resulting Criminal History Category of III.

## II. The Assigned Criminal History Category Substantially Over-Represents the Seriousness of the Defendant's Criminal History

Mr. Johnson has some criminal history and he is assigned 6 criminal history points, resulting in criminal history category III. (*See* PSR p.11, ¶55). As more fully discussed herein, Mr. Johnson is requesting a downward departure of his criminal history category pursuant to U.S.S.G. § 4A1.(b)(1) – "If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history . . . a downward departure may be warranted."

First of all, the PSR assigns one criminal history point for each of two conviction(s) occurring on April 17, 2019. *See* PSR, ¶¶ 51 & 52. It appears the underlying conduct for both convictions is for the same incident. Furthermore, it appears he was sentenced for both convictions on the same day and by the same Court. Consequently, he should only be assigned 1 criminal history point for these two (combined) convictions noted in ¶¶ 51 & 52.

Second, the first conviction noted, for which criminal 1 history point is assigned, is a conviction imposed in 2012 – over 11 & ½ years ago. (*See* PSR ¶49). Although this conviction and sentence (imprisonment exceeding 1 year) is counted [1] because the instant case conduct occurred on January 6, 2021, it is nevertheless submitted that due to the age of the conviction the "blanket" assignment of 1 criminal history point

---

[1]   *See* U.S.S.G. § 4A1.2(e)(1) – " Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted."

should lead this Court to consider a one-level criminal history category downward departure to criminal history category II.

Accordingly, Mr. Johnson submits, pursuant to U.S.S. G. § 4A1.3(b)(1), a downward criminal history category departure is warranted. Consequently, this Court should conclude that the criminal history category should lowered to criminal history category II. If such occurs, then the corresponding range of imprisonment is 18-24 months.

### III. Legal Standard – The Post-Booker Sentencing Framework And The Guidelines Are Not Mandatory

As it knows, the Court has broad discretion to consider nearly every aspect of a particular case, and a particular defendant, in fashioning an appropriate sentence.

In early 2005, the United States Supreme Court declared that the Guidelines are advisory, rather than mandatory. *United States v. Booker* 543 U.S.220, 125 S.Ct. 738, 160 L. Ed 2d 621 (2005). Although the Court must consider the Guidelines in imposing a reasonable sentence, the Guidelines are now merely "advisory," constituting just one factor to be considered on equal footing with the other sentencing factors found in 18 U.S.C. §3553 (a). *See id.* at 757,764 – 67, 790.

The *Booker* Court also re-emphasized that the primary sentencing mandate of §3553 (a) is that courts must impose the least amount of imprisonment and sentence necessary to achieve the statutory purposes of punishment-justice, deterrence, incapacitation, and rehabilitation; the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in (18 U.S.C.

§3553(a)(2). 18 U.S.C. §3553(a).[2] This represents a cap above which the Court is *statutorily prohibited* from sentencing - even when a far greater sentence is recommended by the advisory sentencing guidelines. *See, United States v. Denarli*, 892 F.2d 2698, 276-77 (3rd Cir. 1989)(Becker, J., concurring in part, dissenting in part).

In *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court held that the sentencing guidelines are simply an advisory tool to be considered alongside other statutory considerations set forth in 18 U.S.C. §3553 (a). In two more recent summary reversals, the Court further made clear that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors. *Nelson v. United States*, 129 S. Ct. 890 (2009), 2009 WL 160585 (Jan. 26, 2009); *Spears v. United States*, 129 S. Ct. 840 (2009). Rather, the court must weigh each of the factors and impose a sentence that constitutes the least amount of imprisonment necessary pursuant to Section 3553(a). Moreover, as the Supreme Court reiterated, in imposing sentence, "the punishment

---

[2] 18 U.S.C. §3553 (a) states, in pertinent part, "The court shall impose a sentence sufficient, but not greater than necessary, to comply with purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider – (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."Furthermore, paragraph (3) of this subsection directs the Court to consider "the kinds of sentences available."

should fit the offender and not merely the crime." *Pepper v. United States*, 131 S.Ct. 1229, 1240 (Mar. 2, 2011).

### A. <u>Nature and Circumstances of the Offense</u>

Mr. Johnson agrees with the Statement of the Offense. [39]

### B. <u>History and Characteristics of the Defendant</u>

The Court must consider the specific history and character of the defendant and the specific circumstances and seriousness of the offense and impose no more of a sentence than is necessary to promote respect for the law, provide just punishment and treatment, afford adequate deterrence, protect the public, allow restitution to victims, and avoid unwarranted inconsistency among similarly situated defendants. 18 U.S.C. § 3553(a). The Court is no longer limited in the factors it may consider, and may consider any factors it believes relevant to tailoring an individualized and appropriate sentence.[3]

The personal characteristics, including personal and family data, physical condition, mental and emotional health, substance abuse, education, employment and financial history of Mr. Johnson also encourage the sentencing proposal herein. These factors are discussed more fully in the PSR, [46] ¶¶ 61-78.

---

[3]

Under 18 U.S.C. §3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth.

Mr. Johnson was born on April 5, 1991, in Bakersfield, CA. He is the eldest of 8 children. His parents currently reside in Las Vegas, NV, and he enjoys a good relationship with both. He also maintains good relationships with his siblings, including that he currently lives (and works for) with his brother in Sherman, Texas. PSR, [46] ¶ ¶ 61-62.

Mr. Johnson is divorced, but he has two young children from his marriage. (Ages 8 & 11). His ex-wife and children reside in Fort Worth, Texas, and he visits them as often as possible. He has another child (son) from another relationship. PSR, [46] ¶ ¶ 63-64.

He reports being in good health and he has never suffered from or been treated for mental health concerns. He does have a recognized marijuana dependency. PSR, [46] ¶¶ 67-69. Thus, if he is remanded to the Federal Bureau of Prisons Mr. Johnson asks for a judicial recommendation for the Residential Drug Abuse Treatment Program. (RDAP)

Mr. Johnson obtained is GED in 2012 and has attended some community college. He has never served in the military. PSR, [46] ¶¶ 70-71.

For approximately the past year, he was is employed in his brother's construction company, for whom he has also sporadically worked for during the past 4 to 5 years. PSR, [46] ¶ 72.  However, recently, he accepted a full-time position as a General Manager for a Sonic Restaurant in McKinney, Texas.

As noted-above, he is living with his brother. He has no significant assets and, in fact, he is in arrears to the Department of Education and for child-support. The PSR notes that "it does not appear he will be able to pay a fine. PSR, [46] ¶¶ 74-78.

### C. Respect for the Law and Deterrence

Based on Mr. Johnson's personal history and characteristics as described throughout this memorandum, it is improbable that he will participate in dishonest, reprehensible or criminal activities in the future. There are numerous reasons to be optimistic that Mr. Johnson will not engage in further criminal behavior, including the support of his large family & friends, he is 32 years old, the promise that others have seen in him, as well as his own expected statement to this Court at the sentencing hearing about the hope he has for his future. A prison sentence would have no greater effect toward the goals of sentencing than a period of probation as proposed herein.

### D. The Need to Avoid Unwarranted Sentencing Disparities, and Impose A Sentence That Reflects The Seriousness of the Offense

There is no dispute that Mr. Johnson's criminal conviction in this case is serious and will likely have irreparable unintended consequences. Any lengthy prison term would nonetheless be an inappropriate sentence for Mr. Johnson. The Court should not impose a sentence which would result in an unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Counsel has surveyed other January 6th cases / sentences and notes five similar defendants who committed factually similar behavior.

Paul Hodgkins entered the Capitol building at approximately 2:50 p.m. entered the Senate Chamber at 3:00 p.m., walked among the desks, took a "selfie," and stood with individuals shouting and cheering with a bullhorn. He was in the Senate Chamber for approximately 15 minutes. *See Statement of Offense* [23], 1:21-CR-00188-RDM. Mr. Hodgkins pled guilty to one felony count of 18 U.S.C. 1512(c)(2) and he was sentenced 8 months' incarceration and 24 months supervised release.

Richard Michetti repeatedly entered and exited the Capitol building. *See Statement of Offense,* [41] 1:21-CR-00232-CRC. Mr. Michetti shouted at police officers in the hallway by the Senate Chamber among a group of rioters. He was inside the U.S. Capitol Building for less than an hour and he never entered onto the Senate Floor. Mr. Michetti pled guilty to one count of 18 U.S.C. 1512(c)(2) and he was sentenced (by this Court) to 9 months incarceration and 24 months supervised release.

Matthew Wood climbed through a window, only the tenth person to climb through that window. *See Statement of Offense,* [46] 1:21-CR-00223-APM. Mr. Wood walked into the Speaker of the House's office suite / conference room, as well as other parts of the Capitol Building. Mr. Wood also removed velvet ropes, dropping them onto the ground. Mr. Wood pled guilty to one count of 18 U.S.C. 1512(c)(2), among others, and he was sentenced to 12 months home detention and 36 months probation.

John Andries climbed through a broken window into the U.S. Capitol Building two minutes after the rioters' initial breach at that location. *See Statement of Offense* [61] 1:21-CR-00093-RC. While in the Crypt area, Mr. Andries, among other rioters, surged past police officers and then wandered around the House of Representatives

Chamber. Mr. Andries again pushed past police officers upon leaving. He then went to the area of the House of Representative's Chamber – but he never went onto the floor. He then went to the Speaker's Lobby area. Mr. Andries pled guilty to one count of 18 U.S.C. 1512(c) and he was sentenced to 12 months and one day incarceration with 36 months of supervised release.

Anthony Puma entered the U.S. Capitol building by climbing through a shattered window, walked into various offices, and joined other rioters smoking marijuana. *See Statement of Offense* [48] 1:21-CR-00454-PLF. Mr. Puma pled guilty to one count of 18 U.S.C. 1512(c)(2) and he was sentenced to 9 months incarceration and 24 months supervised release.

Here, Mr. Johnson falls among a group of January 6th defendants who did not commit violent acts while inside or outside of the Capitol. Mr. Johnson walked into the Capitol building through its doors, walked into the Senate Chamber, (for a short period of time) looked through and filmed documents on a Senator's desk, and left. That's it.

To avoid an unwarranted sentencing disparity, this Court should fashion a sentence similar to January 6th defendants Mr. Hodgkins, Mr. Michetti, Mr. Wood, Mr. Andries, and Mr. Puma.

### IV. <u>Sentencing in the COVID-19 Era</u>

Pursuant to the 18 U.S.C. §3553 (a) sentencing factors, the Court needs to consider the impact of the COVID-19 pandemic on incarcerated individuals and, on this basis, grant Mr. Johnson' request for a variant sentence. – a deduction of three

levels from the final USSG base offense level. During the past few years, COVID-19 has rampaged through the BOP facilities, causing extraordinary fear among the inmates and resulting in "lock-down" type conditions. And, with the imposition of a sentence in this case, he faces reporting to the BOP where most institutions continue to be operating under modified lock-down status because of the pandemic.

Because of COVID-19, the unusually harsher "prison" conditions, including lengthy "lock-downs," will unjustly, add to the appropriate sentence/punishment for Mr. Johnson in this case. The mental strain and stress from the fear of becoming infected and possibly suffering severe consequences is a new risk while incarcerated and a deterrent to being locked-up again in the future. Not having the control to maintain proper social distancing and exercise proper hygiene to reduce the risks of contracting the virus were real factors for those persons incarcerated within the BOP.

Presently, it is counsel's understanding the entire (nationwide) BOP is no longer on a "modified operations" status.[4]  Nevertheless, if Mr. Johnson is remanded to the custody of the BOP he may well experience harsher confinement conditions because of the ongoing consequences of the pandemic.

Under the 3553(a)(2)(A) factor of imposing just punishment the court should consider that from March, 2020, through May 2023, the BOP "modified its operations" to respond to the spread of COVID-19. Family and friends are prohibited or otherwise restricted from visiting. Programming, absent select UNICOR operations, is restricted

---

[4] *See* https://www.bop.gov (accessed on June 28, 2023)

and movement throughout the certain detention facilities are also restricted or may be suspended. Mr. Johnson will be subjected to modified BOP operations, including the distinct possibility of being prohibited from seeing loved ones and unable to engage in rehabilitative or productive programming. CDC guidance, such as social distancing, is simply impossible to achieve in our federal prisons — particularly during a lock-down. Incarcerated individuals share bathrooms, sinks, showers, and telephones. They eat together, and sleep in close proximity to each other. They lack the freedom to bathe regularly and, essentially are unable to effectively disinfect their surroundings. Unsurprisingly, approximately 1/3 of all BOP tested positive for the COVID-19 virus and at least 314 inmates and 7 BOP staff have died.[5]

Accordingly, the Court should acknowledge the deleterious impact the pandemic has created on confinement conditions during the past 3+ years and fashion an appropriate sentence taking into account that COVID-19 remains viable and dangerous in the U.S. Prison System, notwithstanding the recent end to the restricted / modified operations within the BOP.

### V.     Defendant's Sentencing Proposal

District Courts have been tasked with crafting sentences that best serve the interests of justice in each individual case. Considering the arguments set forth herein and the recommendations of the PSR, Mr. Johnson respectfully asks this Court to use its discretion to devise a sentence that takes into account the unique circumstances of Mr. Johnson's criminal and personal history, to avoid unwarranted sentencing

---

[5] https://www.bop.gov/coronavirus (accessed on April 5, 2023)

disparities, and the harsh on-going pandemic conditions expected withing the BOP, as well as the language of 18 U.S.C. §3553 & 18 U.S.C. §3661.

Furthermore, Mr. Johnson has had ample time to reflect on his mistakes, and he is deeply regretful. He should not be considered a future risk to the community and he has been sufficiently deterred from committing future crimes. Mr. Johnson is fundamentally a good family person, and there is nothing to suggest that he will be anything other than that moving forward in his life.

At the sentencing hearing, Mr. Johnson may publicly express that he recognizes that he will have to live for the rest of his life with the harsh consequences of these felony convictions, both personally and in his pursuit of gainful employment.

Mr. Johnson is ready and willing to comply with all terms of any sentence imposed. He understands and recognizes that even the slightest violation of a sentencing condition may result in another period of federal imprisonment. The prolonged loss of his liberty, including the devastating and irreparable consequences to his family, is more than enough incentive for him to respect and comply with all aspects of any sentence imposed.[6]

As presented herein, the 18 U.S.C. §3553 (a) sentencing factors, (a sentence should be "sufficient but not greater than necessary") to comply with sentencing goals, the Plea Agreement, including the need to avoid unwarranted sentence disparities

---

[6] Furthermore, there is a remarkable cost savings to the taxpayers of the United States if the Court imposes a shorter, rather than a longer term of incarceration. As noted in the PSR, [46] (¶99) the monthly cost of imprisonment is $3,688.00, $2,980.00 for community confinement, and $371.00 monthly for supervision.

among defendants with similar records who have been found guilty of similar conduct, as well as the concerns of the court and the community, will be satisfied by proposed sentence herein.

Furthermore, as discussed herein the Court should take into account a variance downward of at least three levels from the final USSG base offense level is warranted based the extraordinary detrimental impact of the COVID-19 pandemic on incarcerated individuals within the Federal Bureau of Prisons.

Respectfully, Mr. Johnson asks the Court to impose a variant sentence consisting of, essentially, 9 to 12 months (and one day of imprisonment), followed by 2 years of supervised release, 100 hours of community service, and appropriate restitution and a special assessment.

Such a sentence does nothing to undermine the deterrent effect of sentencing. Neither does such a sentence undermine the statutory need for the Court to underscore, for Mr. Johnson and for the community, the seriousness of the offense for which he is being sentenced. As proposed herein, the sentence appropriately provides just punishment and respect for the law, so that he may continue to be with his family, and continue to live a productive and law-biding life. To do otherwise would be manifestly unjust and a miscarriage of justice.

Finally, if a period of incarceration is imposed, Mr. Johnson is asking the Court for the following recommendations:

1.     A judicial recommendation to the Federal Bureau of Prisons his designation to be within the Dallas, Texas, geographic area. Such a designation will

-14-

allow his immediate family and children to visit with him without undue financial or logistical hardship, and

2.  A judicial recommendation to the Federal Bureau of Prisons for Mr. Johnson participate in the following programs: Federal Prisons Industries Program and the Occupational Industries Program, and

3.  A judicial recommendation to the Federal Bureau of Prisons for the Residential Drug Abuse Treatment Program. (RDAP)

Respectfully submitted,

THE ORENBERG LAW FIRM, P.C.

_____
Allen H. Orenberg, Bar No. 395519
12505 Park Potomac Avenue, 6th Floor
Potomac, Maryland 20854
Telephone:   (301) 984-8005
Fax:              (301) 984-8008
Cell-Phone:  (301) 807-3847
aorenberg@orenberglaw.com
Counsel to Joshua Johnson

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2023, I caused a copy of the foregoing Defendant's Memorandum in Aid of Sentencing, in Case No. 22-80-CRC, to be served by CM/ECF to case registered parties.

_____

Allen H. Orenberg